No. 105,143

STATE OF KANSAS, *Appellee*, v. MONTY CARL ROGERS, *Appellant*.

(298 P.3d 325)

Opinion filed April 12, 2013.

*Ryan Eddinger*, of Kansas Appellate Defender Office, was on the brief for appellant.

*David Maslen*, assistant county attorney, and *Derek Schmidt*, attorney general, were on the brief for appellee.

The opinion of the court was delivered by

ROSEN, J.: Monty Rogers pleaded no contest to aggravated criminal sodomy, an off-grid crime. Pursuant to K.S.A. 21-4643(a)(1)(D), the district court imposed a prison term of life without the possibility of parole for 25 years. The district court also imposed lifetime postrelease supervision. Rogers argues on appeal that both aspects of his sentence—his prison sentence and his postrelease supervision term—are disproportionate to his crime of conviction and, thus, unconstitutional.

## FACTS

The State charged Rogers with two counts of aggravated criminal sodomy in violation of K.S.A. 21-3506(a)(1). The basis for these charges was Rogers' act of performing oral sex on two girls (ages 5 and 7) on or about August 18, 2009. After initially denying these allegations, Rogers admitted to police that he had orally sodomized both girls. Because Rogers was 46 years old when he committed these acts, the aggravated criminal sodomy counts were charged as off-grid crimes. See K.S.A. 21-3506(c) (aggravated criminal sodomy of a child less than 14 years old committed by an offender 18 years old or older is an off-grid felony); K.S.A. 21-4643(a)(1)(D) (An offender 18 years old or older who commits aggravated criminal sodomy of a child less than 14 years old "shall be sentenced to a term of imprisonment for life with a mandatory minimum term of imprisonment of not less than 25 years.").

Ultimately, Rogers, pursuant to a plea agreement, pleaded no contest to one count of aggravated criminal sodomy (involving the 7 year old) in exchange for the State's promise to dismiss the other aggravated criminal sodomy count.

Prior to sentencing, Rogers filed a document entitled "Notice of Defendant's Objection to Sentencing Pursuant to K.S.A. 21-4643," wherein he argued that imposing a hard 25 life sentence in this case would constitute cruel and/or unusual punishment in violation of the Eighth Amendment to the United States Constitution and § 9 of the Kansas Constitution Bill of Rights because such a prison

sentence would be disproportionate to his crime of conviction. In support of his argument, Rogers cited the three factors from *State v. Freeman*, 223 Kan. 362, 367, 574 P.2d 950 (1978), for determining whether a sentence is disproportionate and, thus, unconstitutional under § 9 of the Kansas Constitution Bill of Rights:

"(1) The nature of the offense and the character of the offender should be examined with particular regard to the degree of danger present to society; relevant to this inquiry are the facts of the crime, the violent or nonviolent nature of the offense, the extent of culpability for the injury resulting, and the penological purposes of the prescribed punishment;

"(2) A comparison of the punishment with punishment imposed in this jurisdiction for more serious offenses, and if among them are found more serious crimes punished less severely than the offense in question the challenged penalty is to that extent suspect; and

"(3) A comparison of the penalty with punishments in other jurisdictions for the same offense."

See also *State v. Gomez*, 290 Kan. 858, 867, 235 P.3d 1203 (2010) (The *Freeman* factors are applicable to determining whether a sentence is disproportionate and, thus, unconstitutional under § 9 of the Kansas Constitution Bill of Rights.).

Regarding the first factor, Rogers noted that he was 46 years old and that he had a criminal history score of I. He also contended that his aggravated criminal sodomy conviction was not a violent crime and resulted in little to no injury to the victim. Furthermore, he argued that his crime did not involve any aggravating factors other than the age of the child. Finally, though conceding that Jessica's Law was enacted in Kansas to protect young children from sexual abuse, he argued that his crime was vastly different from the factual situation (abduction, rape, and brutal murder of Jessica Lunsford) that gave rise to the law being originally enacted in Florida. See *State v. D.S.J.*, 15 So. 3d 1188, 1193 (La. App. 2009) (explaining the factual impetus for Florida's passage of the Jessica Lunsford Act).

For the second factor, Rogers argued that the hard 25 life sentence prescribed by K.S.A. 21-4643 for his aggravated criminal sodomy conviction was greater than sentences prescribed for more serious crimes under the Kansas' criminal code. To illustrate this claim, Rogers stated:

"The only crime under Kansas law which carries the same sentence is premediated [*sic*] murder. All other forms of homicide carry a lesser sentence. If the defendant had been convicted of second degree murder, intentional, a severity level 1 offense with his criminal history of I, the maximum sentence the court could impose would be 165 months, almost half of the 300 month[s] hard time carried by K.S.A. 21-4643. The defendant would also be entitled to 20% good time credit and be subject to 36 months post release supervision."

Regarding the third factor, Rogers failed to perform a comparison of the punishment prescribed in Kansas for aggravated criminal sodomy with punishments prescribed in other jurisdictions for the same offense.

Finally, in addition to filing his written objection to sentencing, Rogers filed a motion requesting a departure sentence pursuant to K.S.A. 21-4643(d). In support of this motion, Rogers noted that he had a criminal history score of I, and he alleged that the harm resulting from his crime was "less than the harm normally found in an off grid felony." Rogers contended that the appropriate sentence for his crime was 61 months' imprisonment, the aggravated sentence in the 3-I grid block. By proposing a severity level 3 sentence, Rogers apparently failed to appreciate that, unless the facts of the crime fail to qualify it as an off-grid crime, aggravated criminal sodomy is a severity level 1 person felony. See K.S.A. 21-3506(c).

At sentencing, Rogers did not present any evidence in support of his departure motion or his objection to sentencing pursuant to K.S.A. 21-4643. Defense counsel's statements at sentencing in support of both pleadings consisted of the following:

"[DEFENSE COUNSEL]: . . . Your Honor, the reason—you know, are a number of reasons, I think, for a durational departure here that in my view the—the level of harm done in this case is far less than what you would normally find in an off-grid felony and basically then—plus the fact that [Rogers has a] Criminal History I. So I would ask that the Court impose a sentence for severity level three, Criminal History I, which is 61 months.

"I think everything—the—as far as the notice of our objection to sentencing, I think that pretty well speaks for itself, and I really don't having anything to add."

Rogers addressed the court, saying that he was sorry for what he had done and that he wished "it never happened."

In addressing Rogers' written objection to sentencing and his departure motion, the district court stated:

"[T]he first consideration listed in the analysis of whether a sentence is cruel or unusual punishment is this, 'The nature of the offense and the character of the offender should be examined with particular regard to the degree of danger present to society; relevant to this inquiry are the facts of the crime, the violent or nonviolent nature of the offense, the extent of culpability for the injury resulting, and the penological purposes of the prescribed punishment.'

"The offense of sodomy is generally classified as a level three person felony. I think that's what [defense counsel] wants Mr. Rogers to be sentenced under and that's a—that's a severe offense, but if the victim is under 14 years of age it becomes an aggravated criminal sodomy charge, which is even more severe because the sentence provides a mandatory minimum term of not less than 25 years be imposed.

. . . .

"Well, we have a 46-year-old man here, Mr. Rogers, who commits a sexually violent crime against a seven-year-old girl and so she's under 14, quite a ways under 14, and these are people [*i.e.*, children under 14-years-old,] that we need to protect.

"What is the degree of danger that Mr. Rogers presents to society? Well, we know that there are obviously other young children out there who need to be protected from those who commit this type of offense.

"The written objection of Defendant to the imposition of a life sentence states that the offense is not violent with little or no injury to the victim; however, I find that to be a very violent crime against a seven-year-old girl who according to the Victim Impact Statement is undergoing counseling along with her six-year-old sister who is listed as a witness in the case because of this crime and in the [mother's] statement it says, 'My two girls will be scared for life.'

"If we look at the penological purposes of the prescribed punishment in this case, there's no doubt that the Kansas legislature intended for an adult Defendant, who commits sodomy on a child under the age of 14, and in particular in this case a seven-year-old, to be sentenced to imprisonment for life with a mandatory minimum term of imprisonment of not less than 25 years, and I find no mitigating circumstances when examining all the facts in this case to change that sentence."

Accordingly, the district court denied both Rogers' objection to sentencing and his departure motion and sentenced him to a hard 25 life sentence. Additionally, the court imposed lifetime postrelease supervision. Rogers filed a timely notice of appeal.

THE CONSTITUTIONALITY OF ROGERS' PRISON SENTENCE

Rogers raises two arguments for why this court should reverse

the district court's decision concluding that his hard 25 life sentence for aggravated criminal sodomy was constitutional. First, he argues that the district court's findings of fact and conclusions of law regarding the three *Freeman* factors are insufficient for us to properly review the district court's ultimate conclusion regarding the constitutionality of his sentence under *Freeman*. Accordingly, he argues that based on *State v. Seward*, 289 Kan. 715, 217 P.3d 443 (2009), this court should vacate his sentence and remand the case to the district court so it can make sufficient factual findings and conclusions of law regarding each of the three *Freeman* factors. If this court determines that remanding the case for additional findings of fact and conclusions of law is unwarranted, then Rogers argues in the alternative that application of the *Freeman* factors to the record presently before this court should lead us to conclude that his sentence is disproportionate to his crime and, thus, unconstitutional.

As this court recently noted in *State v. Britt*, 295 Kan. 1018, 1032, 287 P.3d 905 (2012), the three-part *Freeman* test applies to constitutional challenges to sentences under § 9 of the Kansas Constitution Bill of Rights. In *Freeman*, this court recognized: "Punishment may be constitutionally impermissible, although not cruel or unusual in its method, if it is so disproportionate to the crime for which it is inflicted that it shocks the conscience and offends fundamental notions of human dignity." *Freeman*, 223 Kan. at 367.

"In determining whether a sentence is cruel or unusual under § 9 of the Kansas Constitution Bill of Rights, a district court must make both legal and factual inquiries. These inquiries invoke a bifurcated standard of review: without reweighing the evidence, the appellate court reviews the factual underpinnings of the district court's findings under a substantial competent evidence standard, and the district court's ultimate legal conclusion drawn from those facts is reviewed de novo." *Britt*, 295 Kan. 1018, Syl. ¶ 12.

No one factor of the *Freeman* test controls. "Ultimately, one consideration may weigh so heavily that it directs the final conclusion. Before that conclusion is reached, however, consideration should be given to each prong of the test." *State v. Ortega-Cadelan*, 287 Kan. 157, 161, 194 P.3d 1195 (2008). This court also noted in *Ortega-Cadelan* that the first *Freeman* factor (*i.e.*, the nature of

the offense and the character of the offender) is "inherently factual, requiring examination of the facts of the crime and the particular characteristics of the defendant" and that the second and third *Freeman* factors (*i.e.*, a comparison of the punishment with punishment imposed in this jurisdiction for more serious offenses; a comparison of the penalty with punishments in other jurisdictions for the same offense) are legal determinations. *Ortega-Cadelan*, 287 Kan. at 161.

Rogers argues that the district court's factual findings regarding the first *Freeman* factor are deficient. He notes the district court merely found that he was a 46-year-old man while his victim was 7 years old. Rogers contends these findings are insignificant because they are nothing more than elements of the crime established through his plea. He suggests that the district court should have considered his character—namely, his lack of criminal history, "the fact that there was a single count rather than a long standing history of abuse," and his expression of remorse at sentencing for his actions. Finally, he contends that the district court's findings regarding the penological purpose of the hard 25 life sentence "were inadequate because the court simply noted that the legislature's intent was to inflict harsh punishment on sex offenders." As a result of the alleged deficiencies in the district court's findings regarding the first *Freeman* factor, Rogers suggests that we remand the case for further findings pursuant to *Seward*.

In *Seward*, the defendant raised state and federal cruel and/or unusual punishment challenges during plea negotiations, in his motion for downward departure, and during his sentencing hearing, but the district court failed to make any findings regarding the *Freeman* factors. This court noted that appellate courts do not make factual findings but review those made by district courts. This court also noted, however, that there had been confusion in Kansas caselaw regarding whether the burden of assuring that findings were adequate for appeal fell on a party or on the district court. After discussion, this court concluded:

"Supreme Court Rule 165 (2008 Kan. Ct. R. Annot. 235) places the primary duty for arriving at adequate findings and conclusions on the district judge. A defendant who wishes to appeal on the basis of a constitutional challenge to a

sentencing statute must, however, ensure that the findings and conclusions by the district judge are sufficient to support appellate argument by the filing of a motion invoking the judge's duty under Rule 165, if necessary." *Seward*, 289 Kan. 715, Syl. ¶ 3.

Despite the fact that *Seward* had not taken steps to assure that adequate findings had been made, this court remanded the case for further proceedings, but cautioned:

"We emphasize that we believe this case to be exceptional. In the future, a defendant who wishes to appeal on the basis of a constitutional challenge to a sentencing statute must ensure the findings and conclusions by the district judge are sufficient to support appellate argument, by filing of a motion invoking the judge's duty under Rule 165, if necessary." *Seward*, 289 Kan. at 721.

The outcome reached in *Seward* (*i.e.*, remand for factual findings and legal conclusions regarding the *Freeman* factors) is inapplicable here for two reasons. First, *Seward* was filed on October 2, 2009, nearly 10 months prior to Rogers' sentencing on July 29, 2010, and the filing of the journal entry of judgment on August 13, 2010. Accordingly, by the time of sentencing and the filing of the journal entry of judgment, Rogers should have been aware that *Seward*'s holding made him responsible for ensuring that the district court's factual findings regarding the *Freeman* factors were adequate to preserve appellate review of his constitutional challenge to his sentence. Thus, even if we assume without deciding that the district court's factual findings are inadequate, Rogers would bear the responsibility for the deficient findings and, consequently, would not be entitled to the same relief as given to the defendant in *Seward*. *Cf. State v. Berriozabal*, 291 Kan. 568, 592, 243 P.3d 352 (2010) (though district court failed to make specific findings regarding defendant's *Freeman* argument, district court's journal entry was filed prior to *Seward*; accordingly, defendant's case, pursuant to *Seward*, was remanded for entry of sufficient factual findings and conclusions of law regarding the *Freeman* factors).

The second reason Rogers is not entitled to have his case remanded for additional findings of fact is because the district court made findings concerning all the evidence Rogers offered in support of his constitutional challenge to his sentence. The only facts

Rogers cited in his written objection to support his challenge was that (1) he was 46 years old; (2) he had a criminal history of I; (3) his crime was not violent and resulted in little to no injury to the victim; and (4) there were no aggravating factors regarding the crime other than the victim's age. Though the PSI report established Rogers' age and criminal history score, Rogers failed to present any evidence at sentencing to support, at the very least, the last two factual claims or any other facts that would have been relevant to determining the first *Freeman* factor. Consequently, we conclude that the brevity of the district court's factual findings is a result of the scant amount of evidence Rogers offered concerning the first *Freeman* factor.

By asking this court to remand his case, Rogers is essentially seeking another chance to present additional evidence and legal arguments that he should have presented at sentencing to support his *Freeman* argument. Accordingly, there is nothing exceptional about this case that requires remand pursuant to *Seward*.

Application of the *Freeman* factors to the record before this court indicates that Rogers' sentence is constitutional. The district court found that Rogers, a 46-year-old man, orally sodomized a 7 year old. The district court properly found that Rogers'. crime caused the victim harm. According to the victim impact statement, the victim is undergoing counseling as a result of being sexually abused, and the victim's mother stated that her daughter would be scarred for life. The district court also properly concluded that Rogers is a danger to society—particularly young children—because of his willingness to commit a sexually violent crime against a 7 year old. As this court recently stated in *Woodard*:

"The legislative intent underlying Jessica's Law is to protect children by removing perpetrators of sexual crimes against children from society. [Citation omitted.] The United States Supreme Court has observed that sex offenders represent a particularly serious threat in this country and that they are more likely than any other type of offender to commit violent crimes following their release. [Citation omitted.] The State therefore has a particularly compelling interest in using incarceration as a means of protecting its youth from sexual offenders." *State v. Woodard*, 294 Kan. 717, 722, 280 P.3d 203 (2012).

See also K.S.A. 2009 Supp. 21-4642(c)(3)(E) (including aggravated criminal sodomy within definition of "sexually violent crime"); K.S.A. 2009 Supp. 22-3717(d)(2)(E) (same).

Moving on to the second *Freeman* factor (*i.e.*, a comparison of the punishment with punishments imposed in this jurisdiction for more serious offenses), Rogers raises the same argument on appeal that he raised before the district court: aggravated criminal sodomy is less serious than homicide but is punished more severely. Even though the district court failed to address this legal question at sentencing, this court can still address the merits of Rogers' argument on appeal. See *Britt*, 295 Kan. at 1032.

In *Woodard*, this court rejected the same argument that Rogers raises here:

"This argument suffers from several flaws. In the first place, it assumes that murderers necessarily receive more lenient sentences in Kansas than violators of Jessica's Law. This is not the case. In fact, the Kansas Criminal Code sets out a list of transgressions that constitute capital murder, which is an off-grid offense. K.S.A. 21-3439. Capital murder is subject to punishment by death. K.S.A. 21-4624. The penalty for homicide in Kansas may thus be much more severe than the penalties under Jessica's Law. See K.S.A. 21-4638; K.S.A. 21-4643. The fact that the penalty for certain categories of homicide may be less severe than the penalties for other, nonhomicide crimes does not automatically render the penalties for the nonhomicide crimes unconstitutional. There is no strict linear order of criminal activity that ranks all homicides as the most serious crimes and all nonhomicide crimes as less serious, with the corresponding penalties necessarily ranking in diminishing durations of imprisonment.

"Furthermore, as the State points out, Jessica's Law is not the only Kansas statute that provides for more severe penalties for nonhomicide crimes than for certain categories of homicide. Compare, *e.g.*, rape, K.S.A. 21-3502, and aggravated kidnapping, K.S.A. 21-3420, which are severity level 1 offenses, with reckless second-degree murder, K.S.A. 21-3402(b), which is a severity level 2 offense." *Woodard*, 294 Kan. at 723-24.

For similar reasons, this court should conclude that the penalty under K.S.A. 21-4643(a)(1)(D) for aggravated criminal sodomy is not disproportionately harsh when compared with the punishments imposed for other offenses in Kansas.

Finally, as noted above, Rogers failed to address the third *Freeman* factor (*i.e.*, a comparison of the penalty with punishments in other jurisdictions for the same offense) in his arguments before the district court. Consequently, the district court did not address this issue when ruling on the constitutionality of Rogers' sentence. As noted above, the third *Freeman* factor is a purely legal deter-

mination *Ortega-Cadelan*, 287 Kan. at 161, resulting in this court being able to address this particular factor on appeal. See *Britt*, 295 Kan. at 1032. Despite the ability of this court to address the issue, Rogers has failed to brief the third *Freeman* issue on appeal. An issue not briefed by an appellant is deemed waived and abandoned. *State v. McCaslin*, 291 Kan. 697, 709, 245 P.3d 1030 (2011). Additionally, in *State v. Easterling*, 289 Kan. 470, 487, 213 P.3d 418 (2009), this court concluded that an appellant's failure to brief all of the *Freeman* factors resulted in the issue not being presented "in a posture to be effectively decided" on appeal.

We conclude that Rogers has failed to show that his sentence is unconstitutional under *Freeman*. Accordingly, we affirm the district court's decision to impose a hard 25 life sentence upon Rogers pursuant to K.S.A. 21-4643.

### Lifetime Postrelease Supervision

As noted above, in addition to imposing a hard 25 life sentence, the district court also imposed lifetime postrelease supervision upon Rogers. But under K.S.A. 2009 Supp. 22-3717(u), Rogers should be subject to parole for life if he is ever released from prison. Accordingly, that portion of the sentence imposed by the district court is illegal. See *State v. Cash*, 293 Kan. 326, 330-31, 263 P.3d 786 (2011). This court may correct an illegal sentence *sua sponte*. *State v. Gilliland*, 294 Kan. 519, 552, 275 P.3d 165 (2012); see also K.S.A. 22-3504(1) ("The court may correct an illegal sentence at any time.").

We vacate the district court's imposition of lifetime postrelease supervision upon Rogers. As a result, Rogers' argument concerning the constitutionality of that portion of his sentence is rendered moot.

Sentence is affirmed in part and vacated in part.