NOT DESIGNATED FOR PUBLICATION

No. 118,447

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

SHAUNA S. RODGERS,
*Appellant*.

MEMORANDUM OPINION

Appeal from Shawnee District Court; MARK S. BRAUN, judge. Opinion filed February 22, 2019.
Affirmed in part, sentence vacated in part, and remanded for resentencing.

*Michelle A. Davis*, of Kansas Appellate Defender Office, for appellant.

*Steven J. Obermeier*, assistant solicitor general, and *Derek Schmidt*, attorney general, for appellee.

Before STANDRIDGE, P.J., PIERRON and GREEN, JJ.

PER CURIAM: A jury convicted Shauna S. Rodgers of arson, battery, two counts of interference with parental custody, and five counts of endangering a child. The district court sentenced her to 56 months of incarceration followed by 12 months of postrelease supervision. Rodgers appeals.

Rodgers was in a common-law marriage with Franklin Wright for six years. They had two children together. In February 2016, they separated, Wright remained in the family's home with the children, and Rodgers moved to the Topeka Rescue Mission

(Mission). Wright described his relationship with Rodgers as "[v]ery rocky" and described Rodgers' demeanor as "[v]ery angry and aggressive." In April 2016, Wright filed for a temporary custody order. The district court granted joint custody of the children; Wright had residential custody and Rodgers had supervised parenting time at the Mission for two hours every Tuesday and Thursday and seven hours on Saturdays.

Initially, Wright did not enforce the parenting plan—the Mission had not supervised the visitations, Rodgers had watched the children at Wright's house outside of her scheduled visitation time, and she had taken the children to doctor's appointments. Wright decided to enforce the parenting plan when a police officer advised him to after he had to call police to remove Rodgers from his residence.

On the evening of July 29, 2016, Wright had to work overtime. His coworker, Cassandra Lately, and her three children, went to Wright's house to babysit his children. On his way to work, Wright spoke to Rodgers on the phone and told her he needed to move her Saturday visit to Sunday. Rodgers became angry and verbally aggressive.

While Lately was cooking dinner Rodgers knocked on the door. Wright had warned Lately not to open the door if Rodgers showed up. When Lately did not answer the door, Rodgers returned to her vehicle and retrieved a gas can. She broke a window in Lately's vehicle and poured gasoline inside and across the hood. Rodgers then retrieved a white object from her vehicle and yelled, "Bitch, if you do not open up the door, I will blow your shit up." She lit the white object on fire and threw it into Lately's vehicle, engulfing it in flames.

Lately ran outside to try to save her vehicle, but Rodgers charged at her, punched her in the face, and pulled her hair. Lately testified she and Rodgers "tussled on the ground" while the children were inside the house. As they fought, Lately tried to calm Rodgers and ask her to help save the vehicle. Rodgers grabbed the garden hose, but it was

2

too late to save Lately's vehicle. Lately had parked her vehicle in the driveway, next to the house. It was close enough that the fire damaged the house—the eaves caught on fire, the porch pillars were severely burned, and the paint melted. Lately testified that Rodgers "grabbed [her children], and she didn't grab them in a nice way, she just pulled them by their arms and threw them in the car." Lately tried to stop Rodgers, but Rodgers charged at her again. Lately let her go, as she felt it was a situation appropriately left to law enforcement. Rodgers had not told Lately where she was going with the children.

Lately called Wright about that evening's events, and Wright immediately left work. No one knew where Rodgers had gone with the children. Approximately two hours later, law enforcement informed Wright the children were at the hospital with Rodgers. She had taken the children to the Mission and then to the hospital because she had been concerned for their health and well-being. At the hospital, Wright spoke with the doctor who had examined the children. The doctor was "stumped of why [Rodgers] brought them there" and had no concerns for the children's health.

The State charged Rodgers with aggravated arson, two counts of interference with parental custody, five counts of aggravated endangering a child, and battery. Aggravated arson and aggravated endangering a child are felony offenses, and battery is a misdemeanor. Interference with parental custody can be either a felony or a misdemeanor. After a four-day trial, the jury found Rodgers guilty of the lesser included offense of arson, both counts of interference with parental custody, five counts of the lesser included offense of endangering a child, and battery. The district court sentenced Rodgers to 31 months in the Kansas Department of Corrections (KDOC) with 12 months of postrelease supervision for arson and 7 months in KDOC for both interference with parental custody charges, which it sentenced as felonies. The court ran the two counts of interference with parental custody concurrent with each other but consecutive to the arson charge. The court sentenced her to 12 months in the county jail for each of the convictions for endangering a child, with each sentence running concurrent with each

3

other but consecutive to the felony sentences. It also sentenced her to 6 months in the county jail for battery, to run consecutive to all other charges. In total, the court sentenced Rodgers to 38 months in KDOC, 18 months in jail, and 12 months of postrelease supervision.

*Felony Interference with Parental Custody*

Rodgers contends the State failed to prove that she was not entitled to joint custody of her children, a statutory element of felony interference with parental custody under K.S.A. 2017 Supp. 21-5409. As a result, she claims the district court erred by entering the convictions as felonies.

"'When sufficiency of the evidence is challenged in a criminal case, the standard of review is whether, after reviewing all the evidence in a light most favorable to the prosecution, the appellate court is convinced a rational factfinder could have found the defendant guilty beyond a reasonable doubt. Appellate courts do not reweigh evidence, resolve evidentiary conflicts, or make witness credibility determinations.' [Citation omitted.]" *State v. Chandler*, 307 Kan. 657, 668, 414 P.3d 713 (2018).

"Interference with parental custody is taking or enticing away any child under the age of 16 years with the intent to detain or conceal such child from the child's parent, guardian or other person having the lawful charge of such child." K.S.A. 2017 Supp. 21-5409(a). Rodgers does not challenge the sufficiency of the evidence for any elements of interference with parental custody. Whether the offending parent has joint custody of the child is not an element of the offense. Joint custody is under the classification subsection of the statute. Under K.S.A. 2017 Supp. 21-5409,

> "(c)(1) Interference with parental custody is a:
> (A) Severity level 10, person felony, except as provided in subsection (c)(1)(B); and

4

(B) class A person misdemeanor, if the defendant is a parent entitled to joint custody of the child either on the basis of a court order or by virtue of the absence of a court order."

Joint custody is in the classification subsection for sentencing purposes rather than the subsection outlining the elements of the offense. Rodgers is not challenging the sufficiency of the evidence for an element of the offense. The evidence was sufficient for a finding of guilt beyond a reasonable doubt.

Rodgers also contends the issue is that the district court erroneously omitted the element of joint custody from the jury instructions. She asks us to apply the clear error standard of review because of her failure to object to the jury instructions at trial. However, rather than pursuing the issue as a jury instruction error, she goes on to assert a constitutional violation. She claims the district court violated her rights to trial by jury and due process under the Sixth and Fourteenth Amendments of the United States Constitution by not presenting the issue of whether Rodgers had joint custody of the children to the jury. The district court provided the jurors only with the elements of the offense under subsection (a) of the statute.

The elements for felony interference of parental custody are the same as misdemeanor interference with parental custody. Rodgers asserts that although the State charged her offenses as felonies, the wording alleged the misdemeanor offense. The court never instructed the jurors to determine whether Rodgers had joint custody of the children. By accepting the verdict of guilty as charged, the court essentially conducted the fact-finding that the jury should have conducted.

Statutory interpretation is a question of law over which we conduct unlimited review. *State v. McReynolds*, 288 Kan. 318, 331, 202 P.3d 658 (2009).

5

Although Rodgers did not object at trial, the Kansas Supreme Court has determined that appellate courts may consider *Apprendi* issues for the first time on appeal. *State v. Anthony*, 273 Kan. 726, 727, 45 P.3d 852 (2002).

In *Apprendi v. New Jersey*, 530 U.S. 466, 490, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000), the United States Supreme Court held: "Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." "The policy rationale behind *Apprendi* is that a court violates the United States Constitution if it invades the jury's territory by finding facts at sentencing." *State v. Dickey*, 301 Kan. 1018, 1036, 350 P.3d 1054 (2015).

*Apprendi* does not apply. The district court made no additional findings of fact at sentencing. The *Apprendi* Court aimed toward preventing state legislatures from "'remov[ing] from the jury the assessment of facts that increase the prescribed range of penalties to which a criminal defendant is exposed.'" 530 U.S. at 490. Ultimately, "the essential Sixth Amendment inquiry is whether a fact is an element of the crime. When a finding of fact alters the legally prescribed punishment so as to aggravate it, the fact necessarily forms a constituent part of a new offense and must be submitted to the jury." *Alleyne v. United States*, 570 U.S. 99, 114-15, 133 S. Ct. 2151, 186 L. Ed. 2d 314 (2013). While the felony offense of interfering with parental custody has a greater punishment, whether a defendant is a parent entitled to joint custody is not an element of the crime or a new offense. Custody is a sentencing issue under K.S.A. 2017 Supp. 21-5409(c)(1). Therefore, the district court did not violate Rodgers' constitutional rights by not submitting the question to the jury.

Whether a sentence is illegal under K.S.A. 2017 Supp. 22-3504 is a question of law over which the appellate court has unlimited review. *State v. Lee*, 304 Kan. 416, 417, 372 P.3d 415 (2016). "A sentence is illegal under K.S.A. 22-3504 when: (1) it is imposed by a court without jurisdiction; (2) it does not conform to the applicable statutory provisions, either in character or punishment; or (3) it is ambiguous with respect to the time and manner in which it is to be served. [Citation omitted.]" *State v. Hayes*, 307 Kan. 537, 538, 411 P.3d 1225 (2018). We may correct an illegal sentence sua sponte. *State v. Rogers*, 297 Kan. 83, 93, 298 P.3d 325 (2013) (citing *State v. Gilliland*, 294 Kan. 519, 552, 276 P.3d 165 [2012]).

Under K.S.A. 2017 Supp. 21-5409(c)(1)(B), interference with parental custody is a "class A person misdemeanor, if the defendant is a parent entitled to joint custody of the child either on the basis of a court order or by virtue of the absence of a court order." If the defendant is not a parent entitled to joint custody, the offense is a severity level 10 person felony.

At trial, the State submitted the temporary parenting plan for Wright and Rodgers. The district court had granted them joint custody of the children. Wright testified he went to court to obtain a temporary custody order, stating "[i]t was still 50/50 custody." In closing arguments, the State noted, "there was a custody order in place, it was Friday, it was not the defendant's day." The State has not contested that Rodgers had joint custody of the children, only that it was not her day to have visitation with them.

The evidence shows Rodgers was entitled to joint custody of the children based on a court order. The district court improperly sentenced Rodgers under K.S.A. 2017 Supp. 21-5409(c)(1)(A), as a felony offense, instead of under subsection (c)(1)(B), as a

misdemeanor offense. We must vacate the sentence and remand for resentencing to a misdemeanor charge of interference with parental custody.

*Misstatement of Law*

Rodgers contends the State misstated the law in closing arguments. She asserts that interference with parental custody is a specific intent offense and the State lowered its burden of proving her intent to detain or conceal the children from Wright by claiming that the issue was whether she could legally take the children at that time.

Under *State v. Sherman*, 305 Kan. 88, 109, 378 P.3d 1060 (2016), the appellate court uses a two-step process to evaluate claims of prosecutorial error:

> "These two steps can and should be simply described as error and prejudice. To determine whether prosecutorial error has occurred, the appellate court must decide whether the prosecutorial acts complained of fall outside the wide latitude afforded prosecutors to conduct the State's case and attempt to obtain a conviction in a manner that does not offend the defendant's constitutional right to a fair trial. If error is found, the appellate court must next determine whether the error prejudiced the defendant's due process rights to a fair trial. In evaluating prejudice, we simply adopt the traditional constitutional harmlessness inquiry demanded by *Chapman* [*v. California*, 386 U.S. 18, 87 S. Ct. 824, 17 L. Ed. 2d 705 (1967)]. In other words, prosecutorial error is harmless if the State can demonstrate 'beyond a reasonable doubt that the error complained of will not or did not affect the outcome of the trial in light of the entire record, *i.e.*, where there is no reasonable possibility that the error contributed to the verdict.' *State v. Ward*, 292 Kan. 541, Syl. ¶ 6, 256 P.3d 801 (2011), *cert. denied* 565 U.S. 1221 (2012). We continue to acknowledge that the statutory harmlessness test also applies to prosecutorial error, but when 'analyzing both constitutional and nonconstitutional error, an appellate court need only address the higher standard of constitutional error.' [Citation omitted.]"

Even if the State's actions were egregious, reversal of a criminal conviction is not an appropriate sanction if the actions are determined to satisfy the constitutional harmlessness test. See *Sherman*, 305 Kan. at 114.

> "Interference with parental custody, there was a custody order in place, it was Friday, it was not the defendant's day. You can look at State's Exhibit Number 1 when you are deliberating. *And* the evidence shows the defendant took [the children] with the apparent attempt to conceal or detain the children from the father.
>
> "The fact that she's the mother does not give her a defense. The fact that the children were found a few hours later is not a defense. The issue here is, she took the children, she was not legally allowed to take the kids at that point in time." (Emphasis added.)

The elements of interference with parental custody, as provided in PIK Crim. 4th 54.230 (2016 Supp.), are (1) the child was under age 16; (2) the defendant took or enticed the child away; (3) the defendant did so with the intent to detain or conceal the child from the parent, guardian, or person having lawful charge of the child; and (4) when and where the offense occurred. See K.S.A. 2017 Supp. 21-5409(a).

The State did not seek to replace the "intent to detain or conceal" with the assertion that Rodgers could not have legally taken the children at that point. Reviewing the State's entire closing argument, it is apparent that the State tried to explain these offenses in as little time as possible as the bulk of its arguments focused on trying to convince the jury that the arson and endangering a child charges should have been aggravated offenses. As a result, the State did not review interference with parental custody element by element. Instead, it combined its entire argument for the offenses in the above two paragraphs, providing a broad argument for a guilty conviction.

9

The second and third elements require proof that the defendant took the children with the intent to detain or conceal them from the parent having lawful charge of them. By stating that it was not Rodgers' day to have the children *and* the evidence showed the requisite intent, the State showed its focus was on proving that Rodgers did not have lawful charge of the children when she took them. The State did not seek to equate her taking the children in violation of the parenting plan with the intent to detain or conceal. Under K.S.A. 2017 Supp. 21-5409, the taking of the children must have been committed when Rodgers did not lawfully have charge over the children, which the State accurately presented to the jury. The State's failure to focus on the element of intent is not a misstatement of the law; it is merely an element the State, for whatever reason, saw no need to expand on beyond mentioning that the evidence proved it. Therefore, no prosecutorial error occurred and we need not analyze prejudice.

*Adequate Statutory Notice of Criminal Conduct*

Rodgers claims K.S.A. 2017 Supp. 21-5409 is unconstitutionally vague because it failed to give fair warning as to what conduct is criminal. She contends that the State prosecuted her on the theory that her taking physical custody of the children was sufficient to show intent to detain or conceal. She further asserts that the State's ability to prosecute under that theory proved that the statute failed to provide an objective standard for enforcement.

"Whether a statute is constitutional is a question of law subject to unlimited review. [Citation omitted.] This court presumes that statutes are constitutional and resolves all doubts in favor of passing constitutional muster." *State v. Bollinger*, 302 Kan. 309, 318, 352 P.3d 1003 (2015). This court must find the statute constitutionally valid if there is any reasonable way to construe it as such. 302 Kan. at 318. The test for constitutional vagueness consists of two inquiries: (1) whether the statute provides "a

10

person of ordinary intelligence" fair warning as to the proscribed conduct and (2) whether it protects against arbitrary and unreasonable enforcement. 302 Kan. at 318.

Rodgers failed to raise this issue before the district court. She contends that although we generally cannot review a constitutional issue raised for the first time on appeal, the vagueness argument fits into two exceptions to the general rule. Rodgers asserts this is an issue of law arising from proved or admitted facts that is determinative of the case and consideration is necessary to prevent denial of a fundamental right. This court has permitted review of constitutional vagueness under those exceptions. *State v. White*, 53 Kan. App. 2d 44, 55, 384 P.3d 13 (2016).

Rodgers contends the statute is constitutionally invalid under both inquiries of the test. She first claims the statute was unconstitutional as it applied to her. She asserts the statute did not provide her fair warning as to the proscribed behavior because it permitted the State to prosecute her under the theory that her taking the children was sufficient to show intent to detain or conceal. However, her characterization of the State's theory of "intent to detain or conceal" is inaccurate.

As noted above, even though the State argued the issue was that Rodgers took the children in violation of the parenting plan, it did not intend that argument to replace the intent element. Before making that statement, the State said it was not Rodgers' day to have the children *and* the evidence shows she took them with the intent to detain or conceal them from Wright. This intent was evidenced in Wright's testimony that he did not know where Rodgers had gone with the children and, when he arrived home, the officers did not know where the children were either. Wright further testified that he only got the kids back approximately two hours later when the officers said he could pick them up at the hospital. He had been unaware that Rodgers had taken the children to the Mission and the hospital. Because direct evidence of a defendant's state of mind is so

11

rarely available, the State may use circumstantial evidence to provide intent. *State v. Thach*, 305 Kan. 72, 83-84, 378 P.3d 522 (2016).

The State's mere reference to the evidence in closing does not change the theory of prosecution to an impermissible one. The State's assertion that Rodgers illegally took the children supported the statutory requirements that the defendant take the children and not have lawful charge of them. Because Rodgers based her claim on her misunderstanding of the State's theory of prosecution, the claim fails to show that the statute is unconstitutionally vague as applied.

Rodgers' based her assertion that the unconstitutional vagueness provides for arbitrary and discriminatory enforcement on the same erroneous interpretation of the State's theory of prosecution. Therefore, her claim fails on both points. K.S.A. 2017 Supp. 21-5409 is not unconstitutionally vague as applied to Rodgers.

Affirmed in part, sentence vacated in part, and remanded for resentencing to a legal sentence based on misdemeanor interference with parental custody.