NOT DESIGNATED FOR PUBLICATION

No. 120,529

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

OSCAR ZAPATA JR.,
*Appellant*.

MEMORANDUM OPINION

Appeal from Riley District Court; MERYL D. WILSON, judge. Opinion filed February 14, 2020. Affirmed in part, reversed in part, and remanded with directions.

*Kasper Schirer*, of Kansas Appellate Defender Office, for appellant.

*Barry K. Disney*, senior deputy county attorney, *Barry Wilkerson*, county attorney, and *Derek Schmidt*, attorney general, for appellee.

Before ARNOLD-BURGER, C.J., HILL and GARDNER, JJ.

PER CURIAM: Oscar Zapata Jr. appeals from his sentence after pleading no contest to one count each of aggravated burglary and aggravated sexual battery. At the original sentencing, the district court imposed a 36-month period of postrelease supervision. A few weeks later, the State filed a motion requesting that the district court resentence Zapata in accordance with K.S.A. 2018 Supp. 22-3717(d)(1)(G), which requires lifetime postrelease supervision for persons being sentenced for a sexually violent crime committed on or after July 1, 2006, when the offender was 18 or older. After holding a hearing, the district court found that Zapata's original sentence was illegal and

1

resentenced him to lifetime postrelease supervision. After a thorough review of the court's decision, we affirm in part, reverse in part, and remand with directions.

FACTUAL AND PROCEDURAL HISTORY

Around 2 a.m. on September 15, 2017, C.H. was being escorted back to her apartment by a male friend after becoming intoxicated at a bar in Manhattan. Zapata drove by and offered to give them a ride in his truck. Zapata and the friend carried C.H. into her apartment and left her there passed out on the living room floor. Zapata then drove away with the friend to drop him off at another residence and returned alone to C.H.'s apartment.

Less than an hour later, C.H.'s roommates returned to the apartment to find Zapata with his pants pulled down and huddled over C.H.—still passed out on the floor but now with her pants and underwear pulled down to her ankles. One roommate yelled, "[H]ey, stop," and told the other roommate, "I think [C.H.] is getting raped." Zapata quickly got up from the floor and pulled his pants up, grabbed his keys, pushed past the roommate through the door, and fled in his truck.

After being identified and located by the police, Zapata admitted he knew C.H. was intoxicated but said he was trying to wake her up to "do sexual things to her." The State charged Zapata with aggravated burglary and attempted rape of C.H.

In August 2018, Zapata pled no contest to the aggravated burglary and a reduced charge of aggravated sexual battery. The State agreed to recommend concurrent sentences, and Zapata agreed not to seek any departure from the presumptive sentence.

Zapata's acknowledgment of rights and entry of plea form reflected that he was 22 years old, that his counsel advised him the aggravated burglary charge was a severity

2

level 4 person felony which carried a postrelease supervision period of 36 months, and that the aggravated sexual battery charge was a severity level 5 person felony which carried a postrelease supervision period of 24 months. The presentence investigation report reflected the same, including the fact that he was 21 at the time of the offenses.

At sentencing, the district court sentenced Zapata to 50 months' imprisonment on the aggravated burglary charge as the primary offense and 32 months' imprisonment on the aggravated sexual battery charge. As to postrelease supervision, the court imposed a term of 36 months for each offense.

Approximately two weeks later, the State filed a motion requesting that the district court resentence Zapata. The State explained that Zapata's aggravated sexual battery conviction was a sexually violent crime as defined in K.S.A. 2018 Supp. 22-3717(d)(1)(G) and (d)(5), which required the district court to impose a mandatory period of lifetime postrelease supervision. Because the district court only sentenced him to a 36-month postrelease supervision period, his sentence was illegal, and the court needed to correct Zapata's sentence. The State ended its motion by conceding that the court should give Zapata a chance to withdraw his plea "[b]ecause the defendant's counsel erroneously advised him of the wrong period of post-release."

Zapata responded, asserting that the State failed to allege in its motion why the district court had jurisdiction to resentence him and that the court lacked jurisdiction to modify a legal sentence. He also asserted that the district court lacked jurisdiction to resentence him because the court properly imposed a lesser term of postrelease supervision. Zapata referenced other cases in which Kansas courts have held that lifetime postrelease supervision was unconstitutional "as applied" to other defendants convicted of sexually violent crimes, including *State v. Riffe*, 308 Kan. 103, 418 P.3d 1278 (2018), and *State v. Proctor*, 47 Kan. App. 2d 889, 280 P.3d 839 (2012), *rev'd and remanded by* S. Ct. order dated June 19, 2013. Zapata raised additional challenges, including that

3

lifetime postrelease supervision as applied would be unconstitutional under the Eighth Amendment to the United States Constitution and Section 9 of the Kansas Constitution Bill of Rights. On this second point, Zapata argued that the factors set out in *State v. Freeman*, 223 Kan. 362, 574 P.2d 950 (1978), favored a finding that imposing lifetime postrelease supervision would be unconstitutional in his case.

At the resentencing hearing, the district court first explained to Zapata that a lifetime postrelease supervision period should have been imposed instead of a 36-month period and gave him a chance to withdraw his plea. Zapata initially said he was confused but ultimately said he understood and declined to withdraw the plea. After hearing arguments from counsel on whether Zapata should be resentenced, the court determined that it had failed to follow the statutory provisions, leading to an illegal sentence. As to the constitutionality of lifetime postrelease supervision, the court found:

> "As it relates to the other arguments made as to the constitutionality of it or the other issues set forth in *Freeman*, the first factors that courts are to consider, degree of danger, facts of the crime, either it was violent or nonviolent. Both parties have stated their position as to what the facts of the case are and what the facts of the case reveal. The Court has considered both the statements made by defense and by the State as it relates to those items.
>
> "As to the second *Freeman* factor, comparing the punishment with other more serious crimes, the defendant correctly points out that we have what many individuals would consider to be more serious crimes that do not carry a lifetime post-release. This becomes a very difficult one to weigh by this Court. It's calling for me to make a judgment as to what crimes are serious or how much one crime is more serious than another crime. It's always been my belief that the legislature makes that decision when they pass the laws and the statutory provisions.
>
> "Even though I might feel like one crime is more serious than the other, and one crime should contain a longer sentence, or one crime should contain the longer post-release, I believe under the *Freeman* case and the others cited that unless it's something which is obviously out of line, is best left up to the legislature.

4

"The third factor, of course, is comparing other states or jurisdictions, and it's apparently uncontroverted not only in case law but statements that Kansas is in a minority, small minority that even provides for lifetime post-release. Once again, because we're not with the majority, does that make this an unconstitutional situation?

"Having considered all of those factors, I don't believe any of them are compelling to the point that this Court is willing to order—enter such an order. Therefore, I am ready to proceed with sentencing at this time."

Ultimately, the district court resentenced Zapata to concurrent prison terms of 50 months on the aggravated burglary charge, 32 months on the aggravated sexual battery charge, and ordered lifetime postrelease supervision.

Zapata subsequently filed a motion asking the district court to make additional findings on its decision to resentence him and declare lifetime postrelease supervision constitutional as applied to the facts of the case. The court granted the request by issuing a journal entry about two weeks after Zapata filed a timely notice of appeal. The order memorialized these findings of fact and conclusions of law:

"1.  The defendant entered a no contest plea to Aggravated Burglary and Aggravated Sexual Battery on August 15th, 2018.

"2.  Prior to entering his plea the defendant was advised in an Acknowledgment of Rights form that the post release supervision duration period for a conviction of Aggravated Sexual Battery was 36 months.

"3.  The defendant was sentenced on October 1st, 2018, at which time the court imposed a post-release supervision term of 36 months for the Aggravated Sexual Battery conviction.

"4.  After sentencing, the Kansas Department of Corrections notified the court and the parties that . . . the post release supervision period imposed by the court was contrary to K.S.A. 2013 Supp. 22-3717(d)(l)(G) and (d)(5) which requires offenders convicted of sexually violent crimes to have a mandatory post release supervision for the duration of the person's natural life.

"5.    On October 29th, 2018 the defendant was brought before the court and informed that the post release duration period imposed upon him at sentencing did not conform to the applicable statutory provision. The court afforded the defendant an opportunity to withdraw the plea he had entered on August 15th, 2018. The defendant request[ed] time to consider the matter.

"6.    On November 5th, 2018, the defendant filed a motion asserting that the court did not [have] jurisdiction to modify the sentence previously imposed.

"7.    On November 9th, 2018, the defendant filed a pleading asserting that the court lacked jurisdiction to modify the sentence, that the sentence originally imposed was legal, and that a period of lifetime post release supervision is unconstitutional under the facts of this case.

"8.    On November 13th, 2018, the defendant appeared in court in person and through his attorney. The defendant was advised that the crime of Aggravated Sexual Battery requires mandatory post release supervision for the duration of the person's natural life. The defendant was again afforded a chance to withdraw his August 15th, 2018 plea. The defendant then inform[ed] the court that he d[id] not want to withdraw the plea he entered on August 15th, 2018.

"9.    The court considers the defendant's objection to lack of jurisdiction and his claim that his sentence imposed was legal. The court finds that because the post release supervision period imposed upon the defendant at his October 1st, 2018 sentencing did not conform to the applicable statutory provision it was an illegal sentence. Because K.S.A. 22-3504 gives the trial court jurisdiction to correct an illegal sentence at any time the court does have jurisdiction to correct the sentence.

"10.   The court considers that defendant's motion that the lifetime post-release supervision is unconstitutional under the facts of this case and finds that the same is not unconstitutional under the facts of the case.

"11.   The court then orders that the defendant be resentenced and the matter proceeds to sentencing as more fully set forth in the Kansas Sentencing Guidelines Journal Entry of Judgment."

Zapata timely appeals.

ANALYSIS

Zapata's main argument on appeal is that the district court lacked jurisdiction to vacate his original sentence of 36 months postrelease supervision because it was a legally imposed sentence. He also raises two alternative arguments, asserting that even if the court had jurisdiction to resentence him, (1) the court's decision on the constitutionality of lifetime postrelease supervision was not supported by sufficient factual findings and based on legal errors; and (2) the court improperly engaged in judicial fact finding in violation of *Apprendi v. New Jersey*, 530 U.S. 466, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000), to extend his postrelease supervision period.

We first discuss the legality of Zapata's original sentence before considering his constitutional challenges. If the 36-month postrelease supervision term originally imposed was a legal sentence then the district court lacked jurisdiction to correct that sentence. In turn, the lifetime postrelease supervision portion of Zapata's sentence would be vacated, causing both of his constitutional challenges to be moot.

*The district court had jurisdiction to correct Zapata's original sentence.*

Zapata argues the original sentence imposed in this case was legal and thus the district court lacked jurisdiction to correct the postrelease supervision period by imposing a lifetime term. He asserts that his original postrelease supervision term was not an illegal sentence because: (1) an "illegal sentence" composed of term-of-years postrelease supervision period may "sometimes" be constitutionally required and (2) the district court failed to make an explicit finding that he was over the age of 18 when he committed the aggravated sexual battery, so the lifetime postrelease supervision provision was not "triggered."

In response, the State notes Zapata pled no contest to aggravated sexual battery, a sexually violent crime that requires mandatory lifetime postrelease supervision under K.S.A. 2018 Supp. 22-3717(d)(1)(G)(i). The State asserts Zapata's first argument is meritless because he is making a constitutional challenge to claim that his original sentence was legal, but the Kansas Supreme Court has held that the definition of an illegal sentence does not include such claims. As to Zapata's challenge to the lack of an age finding, the State contends Zapata's age was "clearly established" because he stated he was 22 years old on the plea agreement forms.

*Our standard of review is unlimited.*

The parties agree that this court exercises unlimited review over whether a sentence is illegal under K.S.A. 2018 Supp. 22-3504. *State v. Lee*, 304 Kan. 416, 417, 372 P.3d 415 (2016). Likewise, this court exercises unlimited review where resolving an issue turns on questions of statutory interpretation. *State v. Alvarez*, 309 Kan. 203, 205, 432 P.3d 1015 (2019).

*Zapata's original sentence was illegal because it did not conform to the applicable statutory provision.*

A sentence is illegal under K.S.A. 2018 Supp. 22-3504(3) when it is "[i]mposed by a court without jurisdiction; *that does not conform to the applicable statutory provision, either in character or punishment*; or that is ambiguous with respect to the time and manner in which it is to be served at the time it is pronounced." (Emphasis added.) A court may correct an illegal sentence at any time while the defendant is serving the sentence. K.S.A. 2018 Supp. 22-3504(1). Because the definition of an illegal sentence does not encompass violations of constitutional provisions, a defendant may not challenge a sentence on constitutional grounds under K.S.A. 2018 Supp. 22-3504. *Lee*, 304 Kan. at 418.

8

Zapata pled no contest to aggravated sexual battery, and the district court imposed a postrelease supervision period of 36 months. However, K.S.A. 2018 Supp. 22-3717(d)(1)(G)(i) requires a lifetime postrelease supervision period for "persons sentenced to imprisonment for a sexually violent crime committed on or after July 1, 2006, when the offender was 18 years of age or older." For offenders under 18 years old, the mandatory period of postrelease supervision is 60 months. K.S.A. 2018 Supp. 22-3717(d)(1)(G)(ii). Aggravated sexual battery is a sexually violent crime. K.S.A. 2018 Supp. 22-3717(d)(5)(I).

The district court ultimately determined Zapata's original sentence failed to take K.S.A. 2018 Supp. 22-3717(d)(1)(G) into account, resulting in an illegal sentence. But Zapata argues, for the first time on appeal, that by not making a finding that Zapata was over the age of 18, it could only sentence him to a limited term of postrelease supervision. So the sentence was legal in the absence of that finding.

But the sentence imposed would not have been legal even under Zapata's theory. The statute required that Zapata be sentenced to 60 months postrelease supervision if he was under 18 years old and lifetime postrelease supervision if he was 18 or over. So resentencing was required even if there was no evidence he was 18 or over.

> a. *The district court had undisputed evidence that Zapata was over the age of 18.*

Understandably, Zapata did not argue that there had been no proof that he was 18 or over at the sentencing, apparently content that his postrelease supervision term was even less than statutorily required. But he did not make the argument at his resentencing hearing either. He makes the argument for the first time on appeal.

9

But an appellant cannot raise issues for the first time on appeal. Although there are several exceptions to this general rule, failure to invoke an exception and explain why this court should hear the issue for the first time on appeal is fatal to Zapata's claim. See *State v. Daniel*, 307 Kan. 428, 430, 410 P.3d 877 (2018).

Moreover, there was no dispute at sentencing that Zapata was over the age of 18. He filed a signed Acknowledgement of Rights and Entry of Plea unequivocally stating he was 22 years old. The document was entered in the record in conjunction with his plea. And regardless, the district court has jurisdiction to correct a sentence that is illegal.

> b. *A successful "as applied" challenge to lifetime postrelease supervision does not change the statutory definition of an illegal sentence.*

In the alternative, Zapata acknowledges that K.S.A. 2018 Supp. 22-3717(d)(1)(G) requires lifetime postrelease supervision, but he still asserts that two developments in the law cause his lesser postrelease term to be a legal sentence not subject to modification or correction. The crux of his argument seems to be that the possibility of a successful constitutional challenge to an otherwise statutorily legal sentence should preclude the court from correcting a previously ordered illegal sentence. Zapata's argument is unpersuasive.

"'A claim that a sentence fails to conform to *constitutional* requirements is not a claim it fails to conform to *statutory* requirements.'" *State v. Edwards*, 281 Kan. 1334, 1337, 135 P.3d 1251 (2006) (quoting *State v. Gayden*, 281 Kan. 290, 293, 130 P.3d 108 [2006]). A defendant in Zapata's position can still challenge lifetime postrelease supervision on constitutional grounds. As Zapata points out in his brief, both the Kansas and United States Constitutions control over statutes. In sum, we must reject Zapata's request to create another definition of "illegal sentence" that incorporates successful "as applied" constitutional challenges.

In sum, Zapata's original sentence was illegal, and the district court had jurisdiction to correct it.

*The district court erred by not making adequate findings of fact and conclusions of law regarding Zapata's claim that lifetime postrelease supervision was unconstitutional as applied.*

Zapata claims, in the alternative, that his new sentence is unconstitutional. He asserts that lifetime postrelease supervision would be a cruel or unusual punishment in violation of the Eighth Amendment to the United States Constitution and Section 9 of the Kansas Constitution Bill of Rights as applied to the specific facts of his case. Zapata contends none of the district court's comments at the hearing or its journal entry memorializing the resentencing adequately addressed the required factors under *Freeman*, 223 Kan. at 367, and asks this court to reverse the order and remand so the district court can make those findings. He properly preserved this issue for appeal.

*Standard of review*

Whether a sentence is cruel or unusual encompasses both legal and factual determinations. *State v. Mossman*, 294 Kan. 901, 906, 281 P.3d 153 (2012). As a result, appellate courts will review a district court's factual findings for substantial competent evidence and its legal conclusions de novo. *State v. Funk*, 301 Kan. 925, 933, 349 P.3d 1230 (2015). A challenge to lifetime postrelease supervision imposed under K.S.A. 2018 Supp. 22-3717(d)(1)(G) is considered an indirect attack on the statute's constitutionality as applied, so "if there is any reasonable way to construe a statute as constitutional, courts have the duty to do so by resolving all doubts in favor of constitutionality." *Mossman*, 294 Kan. at 906-07.

The Kansas Supreme Court has held that this sort of challenge to lifetime postrelease supervision is ripe for appeal, despite being an inherently hypothetical

11

challenge based on a potential future violation, because (1) lifetime postrelease supervision is part of a defendant's sentence and (2) an individual subject to lifetime postrelease supervision "will still be under a sentence when he [or she] is on postrelease supervision." *Mossman*, 294 Kan. at 907.

*Section 9 of the Kansas Constitution Bill of Rights*

In Kansas, the State may not inflict cruel or unusual punishment upon persons convicted of crimes. Kan. Const. Bill of Rights, § 9. This prohibition includes any punishment that "although not cruel or unusual in its method . . . is so disproportionate to the crime for which it is inflicted that it shocks the conscience and offends fundamental notions of human dignity." *Freeman*, 223 Kan. at 367; see *State v. Gomez*, 290 Kan. 858, Syl. ¶ 9, 235 P.3d 1203 (2010). Zapata argues lifetime postrelease supervision is so disproportionate under the facts in his case that it violates Section 9.

To determine whether a sentence's length is unconstitutionally disproportionate to the crime for which that sentence is imposed, Kansas courts consider three factors commonly known as the *Freeman* factors:

> "'(1) The nature of the offense and the character of the offender should be examined with particular regard to the degree of danger present to society; relevant to this inquiry are the facts of the crime, the violent or nonviolent nature of the offense, the extent of culpability for the injury resulting, and the penological purposes of the prescribed punishment;
>
> "'(2) A comparison of the punishment with punishments imposed in this jurisdiction for more serious offenses, and if among them are found more serious crimes punished less severely than the offense in question the challenged penalty to that extent is suspect; and
>
> "'(3) A comparison of the penalty with punishments in other jurisdictions for the same offense.'" *Mossman*, 294 Kan. at 908 (quoting *Freeman*, 223 Kan. at 367).

12

No one factor is individually controlling and "'consideration should be given to each prong of the test,'" but one factor may "'weigh so heavily that it directs the final conclusion.'" 294 Kan. at 908 (quoting *State v. Ortega-Cadelan*, 287 Kan. 157, 161, 194 P.3d 1195 [2018]). When considering proportionality, "'the factual aspects . . . are a necessary part of the overall analysis.'" 294 Kan. at 908 (quoting *Ortega-Cadelan*, 287 Kan. at 161).

*The district court's findings are insufficient for appellate review.*

Kansas courts have noted that the first *Freeman* factor is "inherently factual" because it requires examining "the facts of the crime and the particular characteristics of the defendant." *Ortega-Cadelan*, 287 Kan. at 161. The second and third *Freeman* factors, however, are "legal determinations." 287 Kan. at 161. Zapata argues the district court made no findings required by *Freeman* in support of its decision and therefore that the decision must be reversed and the case remanded so the court can make the required findings. We agree.

In rendering its decision, the district court briefly discussed each of the *Freeman* factors but did not make any specific factual findings. The court said it had considered all the factors and "[didn't] believe any of them are compelling to the point that this Court is willing to order—enter such an order [that lifetime postrelease supervision was unconstitutional as applied to Zapata]." After the hearing, Zapata filed a motion requesting additional factual findings under K.S.A. 2018 Supp. 60-252 and Kansas Supreme Court Rule 165 (2019 Kan. S. Ct. R. 221). The court complied with this request but again failed to set out any factual findings related to the *Freeman* factors. Instead, the court recited the procedural history of the case as it related to correcting the illegal sentence and found: "The court considers that defendant's motion that the lifetime post-release supervision is unconstitutional under the facts of this case and finds that the same is not unconstitutional under the facts of the case."

13

In his brief, Zapata relies heavily on *Riffe*, 308 Kan. at 111-12, in which the Kansas Supreme Court ultimately held the district court's failure to make sufficient factual findings on the first *Freeman* factor warranted a reversal and remand for the district court to use the "proper legal standard." On remand, the district court determined without holding an evidentiary hearing that all of the *Freeman* factors weighed against Riffe based on the evidence available in the record. Another panel of our court affirmed that decision. *State v. Riffe*, No. 120,667, 2019 WL 6333986, at *4-5 (Kan. App. 2019) (unpublished opinion), *petition for rev. filed* December 23, 2019.

Unlike other instances, where the Kansas Supreme Court has reviewed cases in which a court failed to address one of the *Freeman* factors or has made at least some factual findings, the district court here made *no* factual findings to support its decision. See *Riffe*, 308 Kan. at 111-12 (reversing and remanding decision of district court which did not make necessary factual findings to support first *Freeman* factor); *State v. Rogers*, 297 Kan. 83, 90-91, 298 P.3d 325 (2013) (affirming decision which made factual findings based on defendant's presentence investigation report when defendant provided no evidence of his own); *State v. Baber*, 44 Kan. App. 2d 748, 751-53, 240 P.3d 980 (2010) (affirming decision of district court which made findings of fact as to all of what little evidence defendant had presented). With *no* factual findings, especially on the first *Freeman* factor, this court cannot conduct an adequate review of the district court's decision.

Indeed, as Zapata notes, when a district court fails to consider all three *Freeman* factors and does not make findings to support its decision, the Kansas Supreme Court has held the decision must be reversed. See *Riffe*, 308 Kan. at 112. As in *Riffe*, we must direct the district court upon remand to look to the record or conduct an evidentiary hearing, at its discretion, to decide whether lifetime postrelease supervision is constitutional as applied here. In making that decision, the district court must make new and complete

findings that adhere to the three *Freeman* factors and that are based on the evidence presented by the parties.

*Zapata's sentence does not violate the constitutional provisions of* Apprendi.

Finally, Zapata argues for the first time on appeal that his new sentence is unconstitutional under *Apprendi* because a jury did not make a determination that he was 18 or older and he did not knowingly and voluntarily waive his right to a jury trial on that issue. Whether a district court violates a defendant's constitutional rights at sentencing as described under *Apprendi* raises a question of law subject to unlimited review. *State v. Dickey*, 301 Kan. 1018, 1036, 350 P.3d 1054 (2015).

Here, Zapata properly asserts that this court should hear his claim for the first time on appeal because it is purely a legal question based on undisputed facts. We agree.

In 2003, our Supreme Court found in *State v. Walker*, 275 Kan. 46, 51, 60 P.3d 937 (2003), that a plea of guilty to a statutorily defined sexually violent crime provides the basis for an extended postrelease supervision period without resort to the type of court-made fact-findings disapproved by *Apprendi* and *State v. Gould*, 271 Kan. 394, 23 P.3d 801 (2001). This is still good law and has not been overruled or addressed by our Supreme Court since 2003. We are duty bound to follow Kansas Supreme Court precedent, absent some indication the Supreme Court is departing from its previous position. *Majors v. Hillebrand*, 51 Kan. App. 2d 625, 629-30, 349 P.3d 1283 (2015).

But Zapata correctly points out that the statute has changed since *Walker*. Now the potential period for postrelease supervision is not for a term of life for all persons but only for those 18 or over. This creates, in his opinion, a sentencing discrepancy that requires a jury determination. Because Zapata did not have this factor determined by a

15

jury—or even specifically noted by the judge—and he did not waive his right to a jury trial, the sentence must be stricken as being in violation of *Apprendi*.

A different panel of this court considered the same issue in *State v. Cook*, No. 119,715, 2019 WL 3756188, at *2 (Kan. App. 2019) (unpublished opinion), *petition for rev. filed* September 9, 2019.

"[Cook's] argument ignores some fundamental points of law. The '"statutory maximum" for *Apprendi* purposes is the maximum sentence a judge may impose *solely on the basis of the facts reflected in the jury verdict or admitted by the defendant*.' *Blakely v. Washington*, 542 U.S. 296, 303, 124 S. Ct. 2531, 159 L. Ed. 2d 403 (2004). Then, in *United States v. Booker*, 543 U.S. 220, 125 S. Ct. 738, 160 L. Ed. 2d 621 (2005), the United States Supreme Court recognized an exception to the *Apprendi* rule when the defendant admits a fact. 543 U.S. at 244. We have admissions by Cook that lead us to conclude that there is no *Apprendi* violation here." 2019 WL 3756188, at *2.

We find this persuasive. Zapata's age was not an element of his conviction for aggravated sexual battery. K.S.A. 2018 Supp. 21-5505(b). He pleaded no contest to aggravated sexual battery, and there was no requirement that the judge make any finding concerning his age related to his conviction. As part of that plea, he admitted he was 22 years old, making him 21 years old at the time of the offense. The record clearly establishes that he was over the age of 18 when he committed his crimes. We find that there was no violation of *Apprendi* here.

Affirmed in part, reversed in part, and remanded for findings of fact and conclusions of law regarding Zapata's claim that the statutory lifetime postrelease supervision requirement is unconstitutional as applied to him.