No. 98,713

STATE OF KANSAS, *Appellee*, v. ANGELO ORTEGA-CADELAN, *Appellant*.

(194 P.3d 1195)

Opinion filed October 31, 2008.

*Carl Folsom, III*, of Kansas Appellate Defender Office, argued the cause and was on the brief for appellant.

*Kristi L. Barton,* assistant district attorney, argued the cause, and *Nola Tedesco Foulston,* district attorney, and *Stephen N. Six,* attorney general, were with her on the brief for appellee.

The opinion of the court was delivered by

LUCKERT, J.: Angelo Ortega-Cadelan pled guilty to one count of rape in violation of K.S.A. 21-3502(a)(2) (sexual intercourse with child under 14 years of age). He received a mandatory life sentence without the possibility of parole for 25 years and postrelease supervision for life. Ortega-Cadelan appeals his sentence. Raising a new issue on appeal, he argues his sentence constitutes cruel or unusual punishment. In addition, he argues the district court abused its discretion by denying his motion for a downward durational departure sentence.

We affirm Ortega-Cadelan's sentence. Regarding the first issue of whether the sentence constitutes cruel or unusual punishment, we conclude the issue cannot be raised for the first time on appeal. Regarding the second issue, we conclude the sentencing court properly considered all mitigating circumstances and did not abuse its discretion when it concluded those circumstances were not substantial and compelling reasons to impose a departure sentence.

## FACTS

The sentence relates to Ortega-Cadelan's conviction for committing an act of sexual intercourse with a 5-year-old child, his stepdaughter, on or between November 1, 2006, and November 27, 2006. Ortega-Cadelan pled guilty to the statutory rape charge under a plea agreement with the State, and in exchange, he was free to seek a sentencing departure. Ortega-Cadelan filed a motion requesting a durational departure sentence pursuant to K.S.A. 2006 Supp. 21-4643(d), in effect at the time of the offense, and he presented arguments at the sentencing hearing. The district court, however, found none of the reasons asserted by Ortega-Cadelan in his departure motion or at the sentencing hearing were substantial and compelling reasons to depart from the mandatory minimum sentence.

Therefore, pursuant to K.S.A. 2006 Supp. 21-4643(a)(1), the court sentenced Ortega-Cadelan to a mandatory life sentence with-

out the possibility of parole for 25 years. And, pursuant to K.S.A. 2006 Supp. 22-3717(d)(1)(G), the court ordered postrelease supervision for the remainder of Ortega-Cadelan's natural life.

Ortega-Cadelan raises a timely appeal of his sentence. This court has jurisdiction under K.S.A. 22-3601(b)(1) (life sentence; off-grid crime).

## CRUEL OR UNUSUAL PUNISHMENT

Ortega-Cadelan concedes he did not present the constitutional issue of whether his sentence constituted cruel or unusual punishment under § 9 of the Kansas Constitution Bill of Rights to the district court. Generally, constitutional issues cannot be asserted for the first time on appeal. *State v. Gaudina*, 284 Kan. 354, 372, 160 P.3d 854 (2007). However, in *Pierce v. Board of County Commissioners*, 200 Kan. 74, 80-81, 434 P.2d 858 (1967), a constitutional issue case, we recognized three exceptions to the general rule: (1) The newly asserted claim involves only a question of law arising on proved or admitted facts and is determinative of the case; (2) consideration of the claim is necessary to serve the ends of justice or to prevent the denial of fundamental rights; and (3) the district court is right for the wrong reason. See, *e.g., State v. Hawkins*, 285 Kan. 842, 845, 176 P.3d 174 (2008); *State v. Conley*, 270 Kan. 18, 30-31, 11 P.3d 1147 (2000), *cert. denied* 532 U.S. 932 (2001); *State v. Puckett*, 230 Kan. 596, 598-99, 640 P.2d 1198 (1982); but *cf. State v. Snow*, 282 Kan. 323, 342-43, 144 P.3d 729 (2006) (not stating third exception; stating exception as applying to "newly asserted theory that is strictly a question of law and its consideration is necessary to serve the ends of justice"); *State v. Williams*, 275 Kan. 284, 288, 64 P.3d 353 (2003) (same); *State v. Papen*, 274 Kan. 149, 161-62, 50 P.3d 37 (2002) (same).

In past cases when a defendant has suggested one of the *Pierce* exceptions applies to an argument that a sentence is a cruel or unusual punishment, this court has determined the exception does not apply and has not considered the issue. *See, e.g., State v. Myers*, 260 Kan. 669, 700, 923 P.2d 1024 (1996), *cert. denied* 521 U.S. 1118 (1997); see also *Churchill v. State*, 216 Kan. 399, 399, 532

P.2d 1070 (1975) (merely stating general rule that constitutional issues are not considered for first time on appeal).

Ortega-Cadelan suggests a different result is called for in this case. Yet, he fails to argue any specifics regarding how the issue satisfies an exception. He generally suggests that our consideration of the issue is necessary to serve the ends of justice. The difficulty with this argument, as we have noted before, is that we must be able to consider the merits of the issue to determine if justice demands its resolution: "[T]o serve the ends of justice or to prevent the denial of fundamental rights, it follows that, on consideration, we must find reversible error occurred." *State v. Williams*, 275 Kan. 284, 289-90, 64 P.3d 353 (2003). On occasion, such as in *Williams*, the error will be uncontroverted and the only remaining question is the seriousness of the error. In other cases, resolution of another issue in the case will preclude or preordain the outcome of the constitutional question and answer the inquiry of whether justice demands resolution. *Myers*, 260 Kan. at 701. Yet, in still other situations, such as in this case, we must consider whether we are able to analyze the merits of the issue based upon the record before us. See *Singleton v. Wulff*, 428 U.S. 106, 120, 49 L. Ed. 2d 826, 96 S. Ct. 2868 (1976).

Consideration of the sufficiency of the record dovetails with the first exception of whether the newly asserted issue raises a question of law or can be decided on undisputed facts. The specific question raised in this case of whether a sentence offends the constitutional prohibition against cruel or unusual punishment includes both factual and legal questions. This court has adopted three considerations that structure the analysis:

"(1) The nature of the offense and the character of the offender should be examined with particular regard to the degree of danger present to society; relevant to this inquiry are the facts of the crime, the violent or nonviolent nature of the offense, the extent of culpability for the injury resulting, and the penological purposes of the prescribed punishment;

"(2) A comparison of the punishment with punishments imposed in this jurisdiction for more serious offenses, and if among them are found more serious crimes punished less severely than the offense in question the challenged penalty is to that extent suspect; and

"(3) A comparison of the penalty with punishments in other jurisdictions for the same offense." *State v. Freeman,* 223 Kan. 362, 367, 574 P.2d 950 (1978).

The first of these considerations is inherently factual, requiring examination of the facts of the crime and the particular characteristics of the defendant. Because this issue was not raised before the district court, neither party had an opportunity to present evidence or arguments to the district court. Consequently, the State suggests the issue would be better raised in a collateral proceeding brought pursuant to K.S.A. 60-1507 so that both parties have an opportunity to develop a complete record. For example, it is apparent from the transcript of the sentencing hearing that there was a psychological evaluation of Ortega-Cadelan. Had it been known that an issue of cruel or unusual punishment would be raised on appeal, it seems highly probable this evaluation would have been made a part of the record of that proceeding.

Granted, the other considerations in the analysis of whether a sentence is cruel or unusual are legal determinations, and it is primarily the second consideration on which Ortega-Cadelan builds his argument. Yet, one consideration is not necessarily controlling over the other considerations; in fact, in *Freeman* the three considerations were referred to as "the three pronged test." 223 Kan. at 368. Ultimately, one consideration may weigh so heavily that it directs the final conclusion. Before that conclusion is reached, however, consideration should be given to each prong of the test. Particularly where arguments focus upon proportionality, and that is the thrust of Ortega-Cadelan's arguments, the factual aspects of the test are a necessary part of the overall analysis.

Hence, neither the first nor the second exception applies. Similarly, the final exception—the judgment of the district court is right for the wrong reason—cannot be applied because the record is insufficient to determine the merits of the issue.

Consequently, we conclude Ortega-Cadelan's argument that his sentence is a cruel or unusual punishment, presented for the first time on appeal, is not properly before this court.

### DOWNWARD DURATIONAL DEPARTURE MOTION

Next, Ortega-Cadelan argues the district court erred by denying his request for a downward durational departure sentence.

Under the statute in effect at the time of Ortega-Cadelan's offense, K.S.A. 2006 Supp. 21-4643(a), a first-time offender who is age 18 years or older, convicted of committing sexual intercourse with a child under the age of 14, "shall be sentenced to a term of imprisonment for life with a mandatory minimum term of imprisonment of not less than 25 years." Subsection (d) allows for departure sentences, providing "the sentencing judge shall impose the mandatory minimum term of imprisonment provided by subsection (a), unless the judge finds substantial and compelling reasons, following a review of mitigating circumstances, to impose a departure." If the sentencing judge departs from the mandatory minimum term, the departure sentence "shall be the sentence pursuant to the sentencing guidelines act, K.S.A. 21-4701 *et seq.*, and amendments thereto, and no sentence of a mandatory minimum term of imprisonment shall be imposed." K.S.A. 2006 Supp. 21-4643(d).

The statute specifies a nonexclusive list of mitigating factors the judge may consider in determining whether substantial and compelling reasons for departure exist: (1) The defendant has no significant criminal history; (2) the crime was committed while the defendant was under the influence of extreme mental or emotional disturbances; (3) the victim was an accomplice, and the defendant's participation was relatively minor; (4) the defendant acted under extreme distress or substantial domination of another person; (5) the defendant's capacity to appreciate the criminality of his or her conduct or conform such conduct to the requirements of the law was substantially impaired; and (6) the defendant's age at the time of the crime. K.S.A. 2006 Supp. 21-4643(d)(1)-(6).

In his departure motion, Ortega-Cadelan asked the district court to impose a Kansas sentencing guidelines sentence under the grid block corresponding to the severity level of his crime and his criminal history score I. In support of his request, Ortega-Cadelan cited three mitigating circumstances: (1) his lack of prior felony convictions, (2) his admission of guilt in this case, and (3) the sex offender evaluator's conclusion that Ortega-Cadelan was a good candidate for sex offender treatment.

Considering these arguments at the sentencing hearing, the district court recognized that Ortega-Cadelan had "very little previous criminal history" but concluded that "the extent of the crime and the impact of the crime upon a 5-year-old girl outweighs the fact that [Ortega-Cadelan] does not have significant criminal history." The judge also stated: "By the same token, while [Ortega-Cadelan] admitted the responsibility in this matter and took a guilty plea . . . , I'm not going to find that is a substantial and compelling reason to justify a departure either." Indicating that he had considered Ortega-Cadelan's other asserted arguments, the judge stated that "[n]one of the other grounds in the case convince me . . . to impose a durational departure."

As a preliminary matter before we review these rulings, the State suggests this court does not have jurisdiction to consider whether the district court erred in these conclusions because Ortega-Cadelan received a presumptive sentence. It is well known that if the record shows there is no jurisdiction for the appeal, the appellate court must dismiss the case. *State v. Harp*, 283 Kan. 740, 746, 156 P.3d 1268 (2007). To make this determination, the appellate court must conduct a de novo review of the governing statutes because the right to appeal is statutory; neither the United States nor Kansas Constitutions grant such a right. *State v. Johnson*, 286 Kan. 824, 190 P.3d 207 (2008); *State v. Scoville*, 286 Kan. 800, 188 P.3d 959 (2008); *State v. Flynn*, 274 Kan. 473, 477, 55 P.3d 324 (2002).

The Kansas Sentencing Guidelines Act (KSGA), K.S.A. 21-4701 *et seq.*, defines a defendant's right to appeal from his or her sentence and, as applicable to this issue, provides that "the appellate court shall not review: (1) Any sentence that is within the presumptive sentence for the crime." K.S.A. 21-4721(c)(1). The KSGA defines "presumptive sentence" as "the sentence provided in a grid block for an offender classified in that grid block by the combined effect of the crime severity ranking of the current crime of conviction and the offender's criminal history." K.S.A. 21-4703(q). Ortega-Cadelan's sentence does not meet the K.S.A. 21-4703 definition of "presumptive sentence," as his sentence was not issued pursuant to a number in a grid block. Under the circumstances of this case, the KSGA grid was inapplicable. Moreover,

K.S.A. 2006 Supp. 21-4706(d) characterizes Ortega-Cadelan's offense as an "off-grid [crime] for the purposes of sentencing." Thus, the State's jurisdictional argument is misguided; we hold that this court has jurisdiction to review a sentence imposed pursuant to K.S.A. 2006 Supp. 21-4643(a).

We, therefore, consider the merits of Ortega-Cadelan's arguments which suggest that each mitigating circumstance listed in K.S.A. 2006 Supp. 21-4643(d) constitutes a per se substantial and compelling reason for a departure sentence.

Resolving this question requires our interpretation of K.S.A. 2006 Supp. 21-4643(d). Interpretation of a statute presents a question of law, and a de novo standard of appellate review applies. *In re K.M.H.*, 285 Kan. 53, 63, 169 P.3d 1025 (2007).

The rules of statutory interpretation are well known. As this court explained in *In re K.M.H.*:

"When we are called upon to interpret a statute, we first attempt to give effect to the intent of the legislature as expressed through the language enacted. When a statute is plain and unambiguous, we do not speculate as to the legislative intent behind it and will not read the statute to add something not readily found in it. We need not resort to statutory construction. It is only if the statute's language or text is unclear or ambiguous that we move to the next analytical step, applying canons of construction or relying on legislative history construing the statute to effect the legislature's intent. [Citations omitted.]" 285 Kan. at 79.

Here, the statutory language regarding the consideration of mitigating circumstances is clear and unambiguous, stating the judge shall impose a life sentence "unless the judge finds substantial and compelling reasons, following a review of mitigating circumstances, to impose a departure." K.S.A. 2006 Supp. 21-4643(d). Contrary to Ortega-Cadelan's argument, this language does not make "mitigating circumstances" synonymous with "substantial and compelling reasons." Rather, there is a two-step procedure: first, the judge reviews mitigating circumstances; second, the judge must determine if there are substantial and compelling reasons for a departure. The distinction between the terms is reiterated in the provision identifying six mitigating circumstances without reference to these factors as substantial and compelling reasons for departure.

The procedure is similar to that mandated by K.S.A. 21-4716(c)(1), the general departure provision in the KSGA. K.S.A. 21-4716(c)(1) provides a nonexclusive list of mitigating factors, but as stated in *State v. Favela*, 259 Kan. 215, 233, 911 P.2d 792 (1996), "does not define what is a substantial and compelling reason for departure."

Rather, under both the KSGA provision and K.S.A. 2006 Supp. 21-4643(d), the district court must consider whether a mitigating circumstance is a substantial and compelling reason for departure under the facts of the case. There is no formula for this determination, and the list of nonexclusive mitigating circumstances merely serves as a guide for analysis.

Consequently, we hold the mitigating circumstances listed in K.S.A. 2006 Supp. 21-4643(d) do not constitute per se substantial and compelling reasons for a departure sentence.

Ortega-Cadelan's arguments also require us to review the sentencing judge's determination that the mitigating circumstances presented by Ortega-Cadelan were not substantial and compelling reasons for departure. In considering other sentencing departure provisions, this court has reviewed a district court's weighing of aggravating and mitigating circumstances for abuse of discretion. See, *e.g., State v. Jones*, 283 Kan. 186, 215, 151 P.3d 22 (2007) (hard 50 sentence); *State v. Engelhardt*, 280 Kan. 113, 144, 119 P.3d 1148 (2005) (same). In this context we have defined abuse of discretion very broadly, stating: "Judicial discretion is abused when no reasonable person would take the view adopted by the district judge." 280 Kan. at 144. We find no reason to impose a different standard in this context and hold that an abuse of discretion standard applies to an appellate court's review of a district court's determination of whether mitigating circumstances presented under K.S.A. 2006 Supp. 21-4643 are substantial and compelling.

A review of the sentencing transcript convinces us that the district court considered all of Ortega-Cadelan's arguments, acknowledged the mitigating circumstances asserted by Ortega-Cadelan, and explained why it chose to reject the request for a downward durational departure. Reasonable people could agree with the dis-

trict court's assessment of whether the mitigating circumstances were substantial and compelling.

The district court did not abuse its discretion by denying Ortega-Cadelan's motion for a downward durational departure sentence.

Affirmed.