NOT DESIGNATED FOR PUBLICATION

No. 113,168

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

KRISTY L. HERALD,
*Appellant*.

MEMORANDUM OPINION

Appeal from Reno District Court; JOSEPH L. MCCARVILLE III, judge. Opinion filed March 4, 2016. Affirmed.

*Michelle A. Davis*, of Kansas Appellate Defender Office, for appellant.

*Keith E. Schroeder*, county attorney, and *Derek Schmidt*, attorney general, for appellee.

Before PIERRON, P.J., BRUNS and GARDNER, JJ.

*Per Curiam*:  Kristy L. Herald appeals her sentence after pleading guilty to one count of indecent liberties with a child. On appeal, Herald asserts that as applied to her, lifetime postrelease supervision is unconstitutional under § 9 of the Kansas Constitution Bill of Rights. Specifically, she argues that lifetime postrelease supervision is disproportionate to both the nature of her offense and her character. Based on our review of the record as applied to the law, however, we do not find her sentence to be disproportionate to either the nature of the crime Herald committed nor to her character. Therefore, we affirm the sentence imposed by the district court.

1

In early 2011, Herald—who was 27 years old at the time—engaged in sexual conduct with a 15-year-old foster child. Herald was the girl's godmother and had known her since she was 9 years old. Herald later told police that she and the girl "made out" over four weekends. The sexual conduct resulted in hickeys from below the girl's waist to her neck, including on her stomach, sides, and breasts. Herald also told police that she "may have touched [the girl's] vaginal area as well."

On February 28, 2011, the State charged Herald with one count of indecent liberties with a child, a severity level 5 person felony. Three days later, Herald posted an appearance bond and agreed to not contact the girl. On May 16, 2011, the district court revoked her bond, finding that Herald had contacted the girl through a fake Facebook account.

On May 26, 2011, Herald pled guilty to one count of indecent liberties with a child. In exchange, the State agreed not to file any additional charges against Herald relating to her contact with the girl in this case. Prior to sentencing, a presentence investigation report indicated that Herald had a prior juvenile adjudication for indecent liberties with a child when she was about 13 years old.

On August 23, 2011, the district court sentenced Herald to serve 52 months in prison and 24 months' postrelease supervision. The district court also denied Herald's motion to depart, noting Herald's prior juvenile adjudication for the same offense as well as a psychosexual evaluation that stated Herald had a high probability of recidivism.

Approximately 3 years later, the State filed a motion to correct an illegal sentence, alleging that the district court was required to impose lifetime postrelease supervision due to the nature of Herald's crime. During the resentencing hearing, Herald asserted that

imposition of lifetime postrelease supervision in her case would constitute cruel and/or unusual punishment under § 9 of the Kansas Constitution as well as under the Eighth Amendment to the United States Constitution. Applying the *Freeman* factors, the district court found that there was a significant disparity in age—12 years—between Herald and the girl. The district court also found it to be significant that Herald had previously been convicted for indecent liberties with a child when she was a teenager. As such, the district court granted the motion to correct illegal sentence and imposed lifetime postrelease supervision.

Thereafter, Herald filed a timely notice of appeal.

ANALYSIS

Although Herald argued before the district court that postrelease supervision in her case violates both § 9 of the Kansas Constitution Bill of Rights and the Eighth Amendment to the United States Constitution, she asserts only her case-specific § 9 challenge on appeal. See *State v. Boleyn*, 297 Kan. 610, 633, 303 P.3d 680 (2013) (an issue not briefed by an appellant is deemed waived and abandoned). When a defendant argues that a sentence is cruel or unusual, we use a bifurcated standard of review. First, we review the record—without reweighing the evidence—to determine if there is substantial competent evidence to support the district court's factual findings. Second, we review the district court's legal conclusions to determine if they are legally correct. *State v. Spear*, 297 Kan. 780, 799-800, 304 P.3d 1246 (2013).

It is undisputed that K.S.A. 2010 Supp. 22-3717(d)(1)(G) requires mandatory lifetime postrelease supervision for those who have been convicted of a "sexually violent crime" committed on or after July 1, 2006. The crime of indecent liberties with a child falls within the definition of a "sexually violent crime" set forth in K.S.A. 2010 Supp. 22-

3

3717(d)(2)(B). As a result of her conviction, Herald is subject to mandatory lifetime postrelease supervision.

Nevertheless, § 9 of the Kansas Constitution Bill of Rights prohibits the infliction of cruel or unusual punishments. Even if a punishment does not rise to the level of cruel or unusual under the Eighth Amendment, it is prohibited by § 9 "'if it is so disproportionate to the crime for which it is inflicted that it shocks the conscience and offends fundamental notions of human dignity.'" *Spear*, 297 Kan. at 799 (quoting *State v. Gomez*, 290 Kan. 858, Syl. ¶ 9, 235 P.3d 1203 [2010]). In determining whether a punishment is impermissibly disproportionate, we consider the factors set forth by the Kansas Supreme Court in *State v. Freeman*, 233 Kan. 362, 367, 574 P.2d 950 (1978).

Under the *Freeman* factors, we analyze:

"(1) The nature of the offense and the character of the offender should be examined with particular regard to the degree of danger present to society; relevant to this inquiry are the facts of the crime, the violent or nonviolent nature of the offense, the extent of culpability for the injury resulting, and the penological purposes of the prescribed punishment;

"(2) A comparison of the punishment with punishments imposed in this jurisdiction for more serious offenses, and if among them are found more serious crimes punished less severely than the offense in question the challenged penalty is to that extent suspect; and

"(3) A comparison of the penalty with punishments in other jurisdictions for the same offense." *Freeman*, 233 Kan. at 367.

None of these factors is controlling, but "one consideration may weigh so heavily that it directs the final conclusion." *State v. Ortega-Cadelan*, 287 Kan. 157, 161, 194 P.3d 1195 (2008). Our Supreme Court has clarified that the first *Freeman* factor is not a

threshold determination. Instead, we are to take a "holistic approach" in applying the factors. *State v. Seward*, 296 Kan. 979, 985, 297 P.3d 272 (2013).

*First* Freeman *Factor*

Our analysis under the first *Freeman* factor is "inherently factual, requiring examination of the facts of the crime and the particular characteristics of the defendant." *Ortega-Cadelan*, 287 Kan. at 161. As to this factor, Herald argues that (1) the conduct was not as egregious as it could have been; (2) the victim was 15 years old; and (3) her prior conviction for indecent liberties with a child occurred when she was 13 years old.

Initially, the fact that Herald could have committed these acts more violently or egregiously is of no consequence. The Kansas Supreme Court has reasoned that "[s]imply because [a defendant] could have committed these acts more violently does not mean they are not violent in their most basic form, particularly when committed against an especially vulnerable victim." *Seward*, 296 Kan. at 986. As indicated above, indecent liberties with a child—by definition—is a "sexually violent crime" under K.S.A. 2010 Supp. 22-3717(d)(2)(B). Moreover, offenses against minors are "'particularly heinous crimes'" because they "produce '"particularly devastating effects"' on victims, including physical and psychological harm." *State v. Mossman*, 294 Kan. 901, 909, 281 P.3d 153 (2012) (quoting *State v. Wade*, 757 N.W.2d 618, 626 [Iowa 2008]).

In addition, we do not find the fact that the victim was 15 years old to be persuasive. In *Mossman*, a 25-year-old defendant engaged in sexual acts with a 15-year-old child who willingly participated in the sexual acts. As our Supreme Court explained, Kansas law treats 15-year-olds as minors and recognizes that they are deserving of the State's protection. 294 Kan. at 910. As an adult, the burden was on Herald to not take advantage of her victim's poor judgment. See K.S.A. 21-3503(a)(1).

5

We also do not find the fact that Herald was 13 years old when she was first adjudicated for indecent liberties with a child to be persuasive. As the United States Supreme Court has noted, there are "grave concerns over the high rate of recidivism among convicted sex offenders." *Smith v. Doe*, 538 U.S. 84, 103, 123 S. Ct. 1140, 155 L. Ed. 2d 164 (2003). Here, such concerns are particularly significant. Instead of learning from her prior juvenile adjudication, Herald again committed indecent liberties with a child as an adult. Furthermore, the psychosexual evaluation submitted to the district court in this case revealed that Herald has a high probability of recidivism.

We also find that the imposition of lifetime postrelease supervision serves the penological goals of rehabilitation and incapacitation, which are critical in cases involving sex offenders. See *State v. Williams*, 298 Kan. 1075, 1088-89, 319 P.3d 528 (2014). In addition, we do not find the remaining circumstances to support Herald's position under the first *Freeman* factor. The victim in this case was a foster child who Herald has known since the child was 9 years old. Moreover, Herald abused a relationship of trust as the child's godmother. See *Ortega-Cadelan v. State*, No. 110,590, 2014 WL 5849238, at *4 (Kan. App. 2014) (unpublished opinion). Finally, we find it significant that even after Herald was charged in this case, she refused to abide by the conditions of her release by contacting the child on Facebook. In sum, we find that substantial competent evidence supports the district court's findings under the first *Freeman* factor.

*Second and Third* Freeman *Factors*

In regards to the second *Freeman* factor, the Kansas Supreme Court has held that the sentence of lifetime postrelease supervision for aggravated indecent liberties with a child is not constitutionally disproportionate to sentences imposed for other, arguably "more serious" crimes in Kansas. *Mossman*, 294 Kan. at 912-17. It has also found—pursuant to the third *Freeman* factor—that such a sentence is not disproportionate to

6

punishments imposed in other jurisdictions for similar offenses. 294 Kan. at 917-21; see also *State v. Funk*, 301 Kan. 925, 943, 349 P.3d 1230 (2015) (finding that lifetime postrelease supervision was not cruel or unusual punishment under § 9 for attempted indecent solicitation of a child); *State v. Cameron*, 294 Kan. 884, 893-95, 281 P.3d 143 (2012) (finding that lifetime postrelease supervision was not cruel or unusual punishment under § 9 for aggravated indecent solicitation of a child). Accordingly, we also find that these two *Freeman* factors weigh against Herald.

We, therefore, conclude that Herald's sentence to lifetime postrelease supervision does not violate § 9 of the Kansas Constitution Bill of Rights.

Affirmed.