NOT DESIGNATED FOR PUBLICATION

No. 119,252

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

CHRISTOPHER LEE STAPLES,
*Appellant*.

MEMORANDUM OPINION

Appeal from Ford District Court; E. LEIGH HOOD, judge. Opinion filed April 19, 2019. Affirmed.

*Caroline M. Zuschek*, of Kansas Appellate Defender Office, for appellant.

*Jodi Litfin*, assistant solicitor general, and *Derek Schmidt*, attorney general, for appellee.

Before LEBEN, P.J., BUSER and STANDRIDGE, JJ.

PER CURIAM: Christopher Lee Staples was charged with one count of rape of a child under 14 years of age and one count of aggravated indecent liberties with a child, both off-grid person felonies. Following a jury trial, Staples was acquitted of the rape charge but found guilty of aggravated indecent liberties with a child. Staples filed a number of posttrial motions, including a motion for a departure sentence. All of the motions were denied, and Staples appealed. On appeal, a panel of this court affirmed Staples conviction but reversed and remanded his sentence, finding that it was unclear from the record whether the district court properly considered his motion for a departure sentence. On remand, Staples again filed a motion for a departure sentence and it was again denied by the district court, this time expressly considering the necessary factors

1

both individually and collectively. Staples appeals, this time claiming that the district court's denial of his motion for a departure sentence constituted an abuse of discretion because it was a decision with which no reasonable person would agree. Finding no error, we affirm.

FACTS

Following his conviction for aggravated indecent liberties, the district court sentenced Staples to life in prison with no possibility of parole for 25 years. Staples appealed wherein a panel of this court found the following facts:

"Alisha and Justin Killian, K.C.'s [the victim in this case] mom and stepdad, played on a softball team with Staples and his wife, Kristy. Staples, Kristy, and Alisha all worked at Budweiser, which sponsored the softball team, and they sometimes brought their kids to practices and games, where K.C. would play with L.S., the daughter of Staples and Kristy. K.C. and L.S. had also played together on a kids' softball team that Kristy coached. On August 23, 2014, K.C. and L.S. attended the Budweiser softball players' family pool party with their parents.

"Except for K.C.'s allegations against Staples, there's no dispute about the other details of the evening. The party was a regular summertime family gathering: several families attended, the adults ate and drank, and the kids played on a trampoline and swam in the pool. K.C. and L.S. wanted to have a sleepover at K.S.'s home, and their parents agreed. While the parents remained at the pool party, a family friend took K.C. and L.S. to L.S.'s home around 10 or 10:30 p.m.

"When Kristy and Staples came home around 12:30 a.m., K.C. and L.S. were watching movies on the couch in the living room. Kristy and Staples told them it was time to go to bed, so the girls went to sleep on a futon in the basement. The adults then went out to the back porch with one of their neighbors; Staples had another beer and a few cigarettes, and Kristy some water. Kristy and Staples eventually went to bed around 1:30 a.m.

"In the basement, K.C. had a hard time falling asleep because the television was on; she didn't know how to turn it off and couldn't find the remote. She decided to sleep

2

on the floor, underneath the futon, because it was darker and quieter. She had a blanket with her on the floor, and she was wearing pajamas, a bra, and underwear.

"L.S. had fallen asleep on the basement futon right away, but at some point she woke up and couldn't find K.C. L.S. went upstairs to the second floor and woke her parents, told them she couldn't find K.C., and went to sleep in her bedroom.

"Staples then got out of bed and went to look for K.C. When he went down to the basement, he saw her sleeping on the floor, partially underneath the futon, face down with her knees bent under her. He picked her up and laid her down on the futon. According to K.C., Staples then laid down beside her, put his finger in her vagina, touched and kissed her breasts, and French-kissed her. She said that he tasted like cigarettes and beer. She said that she had tried three times to get away and that when she did, she ran upstairs and told Kristy that Staples had touched her.

"Staples denied touching K.C. inappropriately. He said that after he had picked her up, he had sat on the futon and told her that L.S. was sleeping in her bed and that she could go up there if she wanted to. He said that K.C. had run upstairs while he was turning off the basement television.

"No one disputes what happened next. K.C. wanted to go home but didn't want Staples to drive her. Staples called K.C.'s stepdad, Justin, around 2 a.m., and Justin came to pick her up. Staples told Justin that he had picked K.C. up and put her on the futon but that nothing else had happened. Justin told Staples that in the past, K.C. had accused him of touching her breasts when he was playing and wrestling with her and her siblings.

"When K.C. got home, she told her parents the details of what had happened, and they called their family therapist sometime that morning. K.C. had been seeing the therapist for attention-deficit/hyperactivity disorder and anger problems and was on two medications for those conditions, Risperidone and Adderall. The therapist then called the police. K.C. underwent a sexual-assault exam at 5:30 p.m. that same day (she hadn't changed her clothes or taken a shower). Among other things, the sexual assault nurse collected K.C.'s clothes, took a blood sample, swabbed K.C.'s neck and breasts, and did a genital exam. Forensic testing showed Staples' DNA on K.C.'s left breast.

"Before trial, Staples asked the court to order a psychological evaluation of K.C., alleging that she was mentally unstable and untrustworthy because she had been seeing a therapist and had previously lied about being sexually abused. The district court denied Staples' motion, concluding that there wasn't enough evidence to support it.

3

"Various police officers, the sexual-assault nurse, K.C.'s parents, Kristy, L.S., K.C., and Staples all testified, generally as we've already recounted, and the jury acquitted Staples of rape but convicted him of aggravated indecent liberties with a child. The district court denied Staples' motions for acquittal and a new trial. Staples filed a departure motion asking the court to impose a shorter sentence. The district court found that there weren't any substantial and compelling reasons to impose a shorter sentence and gave Staples the sentence provided for by statute: life in prison without the possibility of parole for 25 years." *State v. Staples*, No. 114,717, 2016 WL 7430426, at *1-3 (Kan. App. 2016) (unpublished opinion).

In his initial appeal, Staples challenged both his conviction and the decision of the district court to deny his motion for a departure sentence. 2016 WL 7430426, at *1. A panel of this court affirmed his conviction but reversed and remanded his sentence because the record was unclear as to whether the district court properly considered the requisite factors when imposing its sentence and denying Staples' motion for a departure. 2016 WL 7430426, at *11. Specifically, the panel found that although the district court carefully considered the mitigating factors one by one, it may have made a legal error by failing to consider "whether the mitigating factors—taken together—provided a substantial and compelling reason to depart." 2016 WL 7430426, at *11. If that was the case, then the district court's decision to deny Staples' departure motion was based on an error of law and was therefore an abuse of discretion. 2016 WL 7430426, at *11.

On remand, Staples again filed a motion for a departure sentence. The State filed a response in opposition to Staples' motion and a hearing was held on February 5, 2018. At that hearing, Staples presented the testimony of seven separate witnesses, all of whom testified in favor of the requested departure. Staples also made a statement to the court. The State argued against the granting of Staples' motion but did not present any evidence of its own. At the close of the hearing, the district court denied Staples' motion and found that none of the mitigating circumstances presented, either individually or collectively,

4

rose to the level of being substantial and compelling reasons to justify a departure sentence. Staples appeals the denial of that motion.

## ANALYSIS

On appeal, Staples argues that the district court abused its discretion when it denied his motion for a departure sentence because no reasonable person would agree with the district court's decision.

Generally, under the Kansas Sentencing Guidelines Act, appellate courts lack jurisdiction to review a sentence that is within the presumptive sentence for a crime. K.S.A. 2018 Supp. 21-6820(c)(1); see *State v. Ortega-Cadelan*, 287 Kan. 157, 163-64, 194 P.3d 1195 (2008). The Act defines a presumptive sentence as "the sentence provided in a grid block for an offender classified in that grid block by the combined effect of the crime severity ranking of the offender's current crime of conviction and the offender's criminal history." K.S.A. 2018 Supp. 21-6803(q). Sentences imposed under K.S.A. 2018 Supp. 21-6627, however, do not meet the definition of a presumptive sentence because they are not calculated using the criteria on the sentencing grid. See *Ortega-Cadelan*, 287 Kan. at 164; K.S.A. 2018 Supp. 21-6627(a). Because the court imposed an off-grid sentence, this court has jurisdiction to consider Staples' appeal from the district court's decision to deny his motion to depart. See *Ortega-Cadelan*, 287 Kan. at 164.

Appellate courts review the denial of a motion for a departure sentence for an abuse of discretion. *State v. Randolph*, 297 Kan. 320, 336, 301 P.3d 300 (2013). A district court abuses its discretion if its action:

> "(1) is arbitrary, fanciful, or unreasonable, *i.e.*, if no reasonable person would have taken the view adopted by the trial court; (2) is based on an error of law, *i.e.*, if the discretion is guided by an erroneous legal conclusion; or (3) is based on an error of fact, *i.e.*, if substantial competent evidence does not support a factual finding on which a prerequisite

5

conclusion of law or the exercise of discretion is based." *State v. Ward*, 292 Kan. 541, 550, 256 P.3d 801 (2011).

Here, Staples does not argue that the district court's decision was based on an error of fact or law. Therefore, we consider only whether the district court's decision was one with which a reasonable person would agree.

Pursuant to K.S.A. 2018 Supp. 21-6627(a)(1)(C), a defendant who has been convicted of aggravated indecent liberties with a child shall be sentenced to life in prison with no possibility of parole for 25 years. This hard 25 sentence is mandatory unless the sentencing judge finds substantial and compelling reasons to impose a departure. K.S.A. 2018 Supp. 21-6627(d)(1). Kansas courts have defined the term "substantial" as "something that is real, not imagined; something with substance and not ephemeral." *State v. McKay*, 271 Kan. 725, 728, 26 P.3d 58 (2001). Similarly, "[t]he term 'compelling' implies that the court is forced, by the facts of a case, to leave the status quo or go beyond what is ordinary." 271 Kan. at 728.

When determining whether substantial and compelling reasons exist, a district court should review any mitigating circumstances that are present in a case. Mitigating circumstances include, but are not limited to:

"(A) The defendant has no significant history of prior criminal activity;

"(B) the crime was committed while the defendant was under the influence of extreme mental or emotional disturbances;

"(C) the victim was an accomplice in the crime committed by another person, and the defendant's participation was relatively minor;

"(D) the defendant acted under extreme distress or under the substantial domination of another person;

"(E) the capacity of the defendant to appreciate the criminality of the defendant's conduct or to conform the defendant's conduct to the requirements of law was substantially impaired; and

6

"(F) the age of the defendant at the time of the crime." K.S.A. 2018 Supp. 21-6627(d)(2).

This list of factors is nonexclusive; the district court may also consider mitigating factors not listed in the statute.

In deciding whether to depart, the district court is required to review the mitigating circumstances without attempting to weigh them against any aggravating circumstances that may be present. *State v. Jolly*, 301 Kan. 313, 324, 342 P.3d 935 (2015). Next, the district court must determine whether, in light of the facts of the case, the mitigating circumstances collectively "rise to the level of substantial and compelling reasons to depart from the otherwise mandatory sentence." 301 Kan. at 324; *State v. Beaman*, 295 Kan. 853, 866, 286 P.3d 876 (2012) ("The important question is whether those mitigating factors *together* create substantial and compelling reasons."), *disapproved on other grounds by Jolly*, 301 Kan. 313. If so, then the district court must state those substantial and compelling reasons on the record. K.S.A. 2018 Supp. 21-6627(d)(1); *Jolly*, 301 Kan. at 324.

In this case, Staples asserted a number of different mitigating circumstances to justify his request for a departure sentence. Those mitigating circumstances included: (1) that he had no prior felony convictions or criminal history to speak of; (2) that he previously had never been accused or convicted or any sex offenses; (3) that he had a very supportive family, many of whom testified on his behalf at both departure motion hearings; (4) that he had significant work experience and a job waiting for him upon his release; (5) that his family, and specifically his wife and two children, relied on him for financial and emotional support; (6) that a lesser prison sentence would enable him to participate in sex-offender treatment, obtain a mentor, and better his education; and (7) that he had complied with all of the requirements and had not been in any trouble either while out on bond or since being incarcerated.

7

In considering Staples motion for departure at resentencing, the district court acknowledged that Staples presented a number of potentially mitigating circumstances. Specifically, the court found that Staples' history of steady employment, his strong support from a family that depends on him, his desire to improve himself, and his lack of a criminal history were all somewhat mitigating. Ultimately, however, the district court found that all of those circumstances, whether taken individually or collectively, did not rise to the level of being substantial and compelling reasons to justify a departure. As such, the district court denied Staples' motion to depart and sentenced him to life in prison with no possibility of parole for 25 years.

On appeal, Staples argues that the district court's decision to deny his motion to depart was an abuse of discretion because it was an unreasonable decision with which no reasonable person would agree. The record, however, does not support this argument. Instead, it shows that the district court carefully considered the proposed mitigating circumstances that Staples presented and found that they did not rise to the level of substantial and compelling reasons to justify a departure from the statutorily mandated sentence. We find the district court's decision was not arbitrary, fanciful, or unreasonable. Accordingly, we conclude the district court did not abuse its discretion by denying Staples' motion for a departure sentence.

Affirmed.