NOT DESIGNATED FOR PUBLICATION

Nos. 121,971
121,991

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

CHO MY YA,
*Appellant*.

MEMORANDUM OPINION

Appeal from Finney District Court; ROBERT J. FREDERICK, judge. Opinion filed February 25, 2022. Affirmed and remanded with directions.

*Ryan J. Eddinger*, of Kansas Appellate Defender Office, for appellant.

*Tamara S. Hicks*, assistant county attorney, *Brian Sherwood*, assistant county attorney, *Susan Hillier Richmeier*, county attorney, and *Derek Schmidt*, attorney general, for appellee.

Before POWELL, P.J., SCHROEDER, J., and JAMES L. BURGESS, S.J.

PER CURIAM: In 2015, Cho My Ya pleaded no contest to charges in three cases, including reckless second-degree murder. At sentencing, the district court imposed a departure sentence of 345 months' imprisonment. Ya appealed, claiming the State had violated the plea agreement. A panel of our court agreed with Ya and remanded for resentencing. Prior to her resentencing, Ya filed a plea withdrawal motion in which she alleged her plea had not been knowing and voluntary due to her being misled and incompetent counsel. After a hearing, the district court denied Ya's motion. At

1

resentencing, the district court once again sentenced Ya to a departure sentence of 345 months in prison. Ya now appeals, arguing she demonstrated good cause to withdraw her plea. She also claims the district court should have granted her a greater downward departure. After a careful review of the record, and for reasons we explain below, we affirm and remand with directions to correct the journal entry of resentencing.

FACTUAL AND PROCEDURAL BACKGROUND

As part of a plea agreement with the State, Ya pleaded no contest to one count of reckless second-degree murder of her infant child, two counts of interference with a law enforcement officer, three misdemeanor counts of violating a protective order, and three misdemeanor counts of intimidation of a witness. The district court accepted Ya's pleas and found her guilty. Prior to sentencing, Ya filed a motion for dispositional and/or durational departure to 180 months' imprisonment. At sentencing, the district judge denied the dispositional departure but granted a downward departure sentence from a possible maximum of 460 months' imprisonment based on Ya's criminal history score of B to 345 months' imprisonment.

Ya appealed, claiming the State had violated the plea agreement. A panel of our court agreed and remanded the case for resentencing. *State v. Ya*, No. 116,211, 2017 WL 5622838, at *4 (Kan. App. 2017) (unpublished opinion).

On remand, and prior to her resentencing, Ya filed a motion to withdraw her plea. At the May 24, 2019 hearing on this motion, Ya testified that Ron Evans, her primary attorney who is now deceased, spoke with her about the plea agreement. Ya asserted Evans and her other attorney, Therese Hartnett, told Ya her sentence would be 10-12 years. Ya believed she was pleading no contest to a negligent form of homicide. Ya stated she had a hard time understanding what was happening at the plea hearing because the judge and interpreter spoke at the same time.

2

Two interpreters translated English to Burmese for Ya during the case. Both testified at the hearing, stating Ya never informed them she was having trouble understanding her attorneys or the proceedings.

Hartnett, who was additional counsel or "second chair" in Ya's case, testified that Evans, as lead counsel, negotiated the plea agreement with the State and reviewed it with Ya before Ya signed it. Hartnett served as Ya's attorney at the plea hearing and filed the departure motion. Hartnett believed she had discussed the possible sentence for murder and had advised that the district court did not have to follow the plea agreement with Ya.

The district court, noting the experience of both counsel, found Evans and Hartnett had provided competent representation. The district court found there had been no issue with the interpreters and that Ya understood English. In addition, the district court also found that Ya had been given a copy of the complaint, which contained the amended charge of reckless second-degree murder, and whatever deficient representations Ya's counsel may have allegedly made to her, the district court itself had addressed the possible penalties. Accordingly, the district court denied the motion.

Prior to her resentencing, Ya filed another motion for a downward durational departure, arguing again for a departure sentence of 180 months' imprisonment. This motion was orally amended at the hearing to request a downward departure to 141 months. The district court found substantial and compelling reasons to depart based on Ya's age and immaturity, the absence of significant criminal history, Ya's family history, and her remorse for killing her child. The district court again departed from the aggravated prison sentence of 460 months and sentenced Ya to 345 months in prison.

Ya timely appeals.

I.     DID THE DISTRICT COURT ERR IN FINDING THERE WAS NOT GOOD CAUSE FOR YA
       TO WITHDRAW HER PLEA?

Ya argues the district court abused its discretion when it denied her presentencing plea withdrawal motion. Ya asserts she was not represented by competent counsel because Hartnett was not qualified to represent Ya on such serious charges and Ya believed she would be sentenced to 10-12 years' imprisonment. Ya also alleges she was misled or coerced because she believed she would only be sentenced to 10-12 years; her interpreter and the district court talked at the same time; her interpreter did not accurately or fully relate all the information to her about the plea; and Hartnett told Ya she was going to prison "no matter what." Finally, Ya asserts her plea was not fairly and understandingly made because Ya believed she was pleading no contest to negligent homicide and would only receive 10-12 years' imprisonment and the district court erred by relying too much on the plea colloquy when Hartnett was not qualified to represent her.

The State counters that the plea colloquy shows Ya was satisfied with her counsel and understood the charges, penalties, and plea agreement. The State also points out Ya did not tell the district court she did not understand her interpreters or the plea agreement.

*Standard of Review*

When a district court denies a presentencing motion to withdraw a plea, the defendant, to prevail on appeal, must establish the district court abused its discretion. A district court abuses its discretion if its action is (1) arbitrary, fanciful, or unreasonable; (2) an error of law; or (3) an error of fact. *State v. Frazier*, 311 Kan. 378, 381, 461 P.3d 43 (2020). The party seeking to withdraw the plea bears the burden to establish an abuse of discretion. When reviewing for abuse of discretion, appellate courts do not reweigh

4

evidence or assess witness credibility. *State v. Woodring*, 309 Kan. 379, 380, 435 P.3d 54 (2019).

*Analysis*

A defendant may withdraw a plea "for good cause shown" before sentencing. K.S.A. 2020 Supp. 22-3210(d)(1). "Good cause, defined by Black's Law Dictionary 266 (10th ed. 2014) [is] '[a] legally sufficient reason.'" *In re Guardianship & Conservatorship of Burrell*, 52 Kan. App. 2d 410, 414, 367 P.3d 318 (2016). Good cause is a "'lesser standard'" to meet compared to the manifest injustice standard required for a postsentencing motion to withdraw. *State v. Aguilar*, 290 Kan. 506, 512, 231 P.3d 563 (2010).

When determining whether a defendant has shown good cause, a district court considers the three *Edgar* factors: "(1) [W]as the defendant represented by competent counsel; (2) was the defendant misled, coerced, mistreated, or unfairly taken advantage of; and (3) was the plea fairly and understandingly made?" *Frazier*, 311 Kan. at 381; *State v. Edgar*, 281 Kan. 30, 36, 127 P.3d 986 (2006). But a court "'should not ignore other [non-*Edgar*] factors impacting a plea withdrawal that might exist in a particular case.'" *Frazier*, 311 Kan. at 381.

Ya claims she demonstrated good cause to withdraw her plea by showing her counsel was not competent; she was misled or coerced; and her plea was not fairly and understandingly made. We will address her claims in order.

1. *Ya was represented by competent counsel.*

While defense counsel's competence is one consideration under the *Edgar* factors, it should not be "'mechanically applied to demand that a defendant demonstrate

5

ineffective assistance arising to the level of a violation of the Sixth Amendment' [to the United States Constitution] to demonstrate good cause . . . . 'Merely lackluster advocacy . . . may be plenty to support the first *Edgar* factor.' [Citations omitted.]" *State v. DeAnda*, 307 Kan. 500, 504, 411 P.3d 330 (2018).

Ya first asserts her attorneys' explanation of the plea agreement led her to believe her sentence would be 10-12 years' imprisonment and her attorneys did not tell her the district court was not bound by the plea terms. Ya also alleges she could not understand the plea colloquy because the judge and the interpreter talked at the same time. Ya highlights Hartnett's testimony at the plea withdrawal hearing that she was not qualified to represent clients charged with first-degree murder—Ya's original charge.

Ya testified she believed her maximum sentence would be 10-12 years. Yet the plea agreement stated the State agreed to ask for no more than 25 years. Ya admitted her attorneys went over the plea agreement with her, although she claimed they did not discuss that portion of the agreement. Hartnett believed she discussed the possible maximum sentence with Ya before the plea hearing but could not remember for sure.

The district court discussed the possible sentences with Ya during the plea colloquy, informing Ya it was not bound by any agreement and the maximum possible sentence, depending on her criminal history score, was 493 months—just over 41 years. Ya told the district court she understood. The district court asked Ya if she understood the district court was not bound by the plea agreement, and Ya said that she did. At the plea withdrawal hearing, the district court found it incredible to believe Ya would think her maximum sentence was 12 years when her departure motion asked for a departure to 180 months—15 years.

Ya also claims she could not understand the plea colloquy because the judge and the interpreter spoke at the same time. But Ya never informed the district court of this

problem. Ya did not express any issues during the plea colloquy, and she never informed Hartnett or the interpreter that she was having trouble understanding what was going on.

Finally, Ya emphasizes Hartnett's admission that she was not qualified to represent Ya in a first-degree murder case. While Hartnett did admit she was not qualified, Hartnett acted as the second chair for the case while Evans was lead counsel. Evans negotiated the plea agreement with the State, and Hartnett served as Ya's counsel at the plea hearing and filed the departure motion—which she believed Evans reviewed.

The district court noted Evans had been the chief public defender for several years and the chief of the Kansas Death Penalty Unit for several years before that; Hartnett had been a public defender for more than 11 years. The district court found both attorneys provided competent representation. Moreover, the district court noted that even if Ya's attorneys had not adequately informed her of the possible sentences or consequences of her plea, the district court eliminated any prejudicial error by informing Ya of the consequences of her plea during the plea colloquy. See *State v. White*, 289 Kan. 279, 287-88, 211 P.3d 805 (2009).

2.      *Ya was not misled or coerced.*

Second, Ya claims she did not understand she was pleading to the intentional killing of her child but thought she was instead pleading to some form of negligent homicide and would only receive a 10-12-year sentence. However, Ya did not plead to the intentional killing of her child; instead, she pleaded no contest to reckless second-degree murder. Also, Ya's repeated assertion that she believed she was pleading to some form of negligent homicide is contradicted by the record. The plea agreement stated Ya agreed to plead no contest to reckless second-degree murder. At the beginning of the plea hearing, Ya was provided with the new amended complaint listing the charge as reckless second-degree murder. The district court informed Ya of this fact and asked her if she

7

understood. Ya said she did. Also significant is the fact that during Ya's original sentencing, she read a letter to the district court in English where she said she made a reckless mistake in killing her child.

Ya also claims she had a difficult time understanding the proceedings because the judge and interpreter talked at the same time, and she suspected her interpreters did not accurately or fully relate all the information to her. Ya had one interpreter when her attorneys met with her in jail and another at the plea hearing. Both interpreters testified Ya never informed them she had any trouble understanding. And, as the district court found, Ya could understand English. Throughout her trial she would respond in English to her attorneys' questions when on the witness stand. Moreover, Ya admitted she had served as an interpreter for other Burmese speakers for medical appointments and before the district and municipal courts.

Our review of the record shows Ya understood the nature of the charged crimes she was pleading to and that she was not misled or coerced. The same district judge presided over both the plea and plea withdrawal hearings. The district judge observed Ya when she stated she understood the nature of the charges and her rights and she was entering the plea freely without coercion. When Ya testified at the plea withdrawal hearing that she was misled and coerced, the district judge evaluated the credibility of such statements because this testimony did not match what had occurred at the time of the plea. The district judge also observed the demeanor of Hartnett and the interpreters when their testimony contradicted Ya. See *State v. Macias-Medina*, 293 Kan. 833, 839, 268 P.3d 1201 (2012) (noting importance of same judge presiding over both hearings).

3.     *Ya's no-contest plea was fairly and understandingly made.*

Finally, Ya argues her plea was not fairly and understandingly made because she thought she was pleading to negligent homicide and would only receive 10-12 years' imprisonment.

As already discussed, the record contradicts Ya's argument. The record is replete with instances of Ya being informed she was pleading to reckless second-degree murder, and she referred to her killing her child as reckless. The plea agreement informed her the State agreed it would not ask for more than 25 years' imprisonment, and the district court informed her the maximum sentence was 493 months, depending on her criminal history score. Significantly, Ya's own departure motion asked for a downward departure to 180 months.

During the plea colloquy, the district court informed Ya of the charges and maximum punishment, her constitutional rights, and asked her if she understood everything. Ya did not convey that she had any issues. The plea hearing transcript shows Ya entered her plea understandingly and voluntarily. The district judge observed Ya when she stated she understood the nature of the charges, the constitutional rights she was waiving, and the consequences of her plea. See *Macias-Medina*, 293 Kan. at 839.

We conclude Ya has not met her burden to show the district court abused its discretion in denying her plea withdrawal motion. We see no errors of law or fact by the district court and conclude a reasonable person could agree with its decision. Ya did not demonstrate good cause to withdraw her plea.

## II. DID THE DISTRICT COURT ERR IN NOT GRANTING A MORE SUBSTANTIAL DEPARTURE SENTENCE?

Ya next argues the district court should have departed further than the 345-month departure sentence she was given. The State responds the departure was appropriate when considering Ya was convicted for the murder of her infant child.

*Standard of Review*

We review the extent of a durational departure by the district court for an abuse of discretion. *State v. Favela*, 259 Kan. 215, 243, 911 P.2d 792 (1996); see *State v. Saucedo*, 310 Kan. 361, 366, 446 P.3d 491 (2019). An abuse of discretion occurs if the judicial action is (1) arbitrary, fanciful, or unreasonable; (2) based on an error of law; or (3) based on an error of fact. *Frazier*, 311 Kan. at 381. The party alleging an abuse of discretion bears the burden to establish such abuse occurred. *Woodring*, 309 Kan. at 380.

*Analysis*

A sentencing judge must impose the presumptive sentence under the revised Kansas Sentencing Guidelines Act, K.S.A. 2020 Supp. 21-6801 et seq., unless the judge finds substantial and compelling reasons—which must be stated on the record—to depart. K.S.A. 2020 Supp. 21-6815(a). K.S.A. 2020 Supp. 21-6815(c)(1) contains a nonexclusive list of mitigating factors to consider, the existence of which "do not constitute per se substantial and compelling reasons" to depart. *State v. Ortega-Cadelan*, 287 Kan. 157, 165, 194 P.3d 1195 (2008). Instead, a departure requires a case-by-case determination— what justifies a departure in one case may not in another. *State v. Bird*, 298 Kan. 393, 397, 312 P.3d 1265 (2013).

The district court found substantial and compelling reasons to depart based on Ya's age and immaturity, her lack of a significant criminal history, her family history, and her remorse for killing her child. The district court durationally departed and imposed a controlling sentence for reckless second-degree murder of 345 months in prison.

But Ya challenges the extent of that departure, arguing the district court should have granted a greater departure, reiterating the factors the district court relied on to grant the departure and claiming the district court unreasonably focused only on the fact the State agreed to a specific sentence term.

The resentencing hearing transcript shows the district court did weigh the mitigating factors, as evidenced by its reliance on them to grant the departure. The district court found it was comfortable with the 345 months' imprisonment sentence Ya received at the first sentencing hearing. The district court did not focus on the State's agreement to recommend a certain sentence. In the plea agreement, the State agreed not to recommend more than 25 years—or 300 months—and, at the resentencing hearing, the State did recommend a departure to 300 months.

The district court found substantial and compelling reasons to grant a downward departure. Considering Ya was convicted for the reckless murder of her child, the district court's decision not to depart to 180 months' imprisonment as Ya asked was a reasonable one.

Finally, we note in our review of this case that the journal entry from Ya's resentencing records her sentence as 435 months in prison, yet the sentence pronounced from the bench was 345 months. Accordingly, we remand the case to the district court so that it may issue a nunc pro tunc order correcting the journal entry.

Affirmed and remanded with directions.

11